ACCEPTED
04-15-00507-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
11/20/2015 5:19:15 PM
KEITH HOTTLE
CLERK

# No. 04-15-00507-CV

IN THE COURT OF APPEALS
FOR THE FOURTH DISTRICT OF TEXAS
AT SAN ANTONIO

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS

11/20/2015 5:19:15 PM

KEITH E. HOTTLE
Clerk

THOMAS MILTON BENSON
AS TRUSTEE OF THE
SHIRLEY L. BENSON TESTAMENTARY TRUST,
*Appellant*,

**v.**

PHIL HARDBERGER AND DYKEMA COX SMITH,
*Appellees*.

Appeal from Probate Court No. 2, Dallas County, Texas,
Trial Court Cause 155,572 & 155,572-A

## BRIEF OF APPELLANT

BECK REDDEN LLP
David J. Beck
State Bar No. 00000070
Russell S. Post
State Bar No. 00797258
rpost@beckredden.com
Troy Ford
State Bar No. 24032181
tford@beckredden.com
Owen J. McGovern
State Bar No. 24092804
omcgovern@beckredden.com
1221 McKinney, Suite 4500
Houston, TX 77010
(713) 951-3700
(713) 951-3720 (Fax)

COUNSEL FOR APPELLANT, THOMAS MILTON BENSON, JR.,
AS TRUSTEE OF THE SHIRLEY L. BENSON TESTAMENTARY TRUST

***Oral Argument Requested***

## IDENTITY OF PARTIES AND COUNSEL

**Appellant:**

Thomas Milton Benson, Jr.,
as Trustee of the Shirley L. Benson Testamentary Trust

**Counsel for Appellant on Appeal and Trial Court:**

David J. Beck
Russell S. Post
Troy Ford
Owen J. McGovern
**BECK REDDEN LLP**
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010

**Counsel for Appellant in the Trial Court:**

Phillip A. Wittmann
(Admitted *pro hoc vice* in probate court)
**STONE PIGMAN WALTHER
        WITTMANN L.L.C.**
546 Carondelet Street
New Orleans, Louisiana 70130-3558

**Appellees:**

Phil Hardberger and Dykema Cox Smith

**Counsel for Appellees on Appeal and in the Trial Court:**

Ellen B. Mitchell
DYKEMA COX SMITH
112 E. Pecan St., Suite 1800
San Antonio, TX 78205

1884.1/570714

**Interested Party:**     Renee Benson (Plaintiff in underlying litigation)

**Counsel for Renee Benson:**

Bennett L. Stahl
**CURL STAHL GEIS**
700 N. St. Mary's Street, Suite 1800
San Antonio, TX 78205

Harriet O'Neill
**LAW OFFICE OF HARRIET O'NEILL, P.C.**
919 Congress Avenue, Suite 1400
Austin, Texas 78701

Emily Harrison Liljenwall
State Bar No. 12352250
**SCHOENBAUM, CURPHY &
        SCANLAN, P.C.**
112 E. Pecan, Suite 3000
San Antonio, Texas 78205

Douglas Alexander
**ALEXANDER, DUBOSE, JEFFERSON &
        TOWNSEND LLP**
515 Congress Ave., Suite 2350
Austin, Texas 78701

**Interested Party:**     Arthur H. Bayern (Co-Receiver in underlying litigation)

**Counsel for Arthur H. Bayern:**

Steven R. Brook
Langley & Banack, Inc.
745 E. Mulberry, Ste. 900
San Antonio, TX 78212

**Trial Court:**     Judge Tom Rickhoff
                Bexar County Probate Court #2
                100 Dolorosa, Room 117
                San Antonio, TX  78205-3002

# TABLE OF CONTENTS

**Page**

Identity of Parties and Counsel ............................................................................. i

Table of Contents ............................................................................................. iii

Table of Authorities ........................................................................................... v

Statement of the Case ...................................................................................... viii

Statement Regarding Oral Argument .................................................................... ix

Issues Presented ............................................................................................... x

Introduction ..................................................................................................... 1

Statement of Facts ............................................................................................ 2

Summary of Argument ....................................................................................... 9

Standard of Review .......................................................................................... 10

Argument ....................................................................................................... 11

I.  It is an abuse of discretion to award fees for activities outside the
    scope of Appellees' appointment. ................................................................. 11

    A.  Appellees began charging the Trust before any hearing was
        held on the appointment. ..................................................................... 12

    B.  Appellees likewise cannot charge the Trust for services
        rendered before the appointment took effect. ........................................... 14

    C.  Appellees' plea in intervention was forbidden by the explicit
        terms of the appointment and provided no value to the Trust. ..................... 18

II. Nothing in the record can support the probate court's conclusion
    that Receiver's hourly rate is reasonable. ..................................................... 21

    A.  Legal fees are not evidence of receiver's fees. ....................................... 21

    B.  Appellees' requested fees are unreasonable. ........................................... 24

III.     Appellees are not entitled to full payment until after a full accounting and discharge of the receivership. .................................................26

Prayer ...............................................................................................................29

Certificate of Service .......................................................................................31

Certificate of Compliance ................................................................................32

APPENDIX

Order Granting First Application for Payment of Fees of Co-Receiver Phil Hardberger and Dykema Cox Smith (CR 471).................Tab A

Order Authorizing Payment of Appointee Fee (CR 472 – 73) ...............Tab B

Second Amended Order Granting Injunction, Suspending Trustee & Appointing Limited Temporary Co-Receivers with Restrictions[1] .......................................................................................Tab C

Letter from Judge Rickhoff to Co-Receivers dated March 8, 2015[2] .........................................................................................Tab D

Excerpts from Application for Payment of Temporary Co-Receiver's Fees and Expenses filed by Arthur H. Bayern[3] .....................Tab E

Letter from Judge Rickhoff to Co-Receivers dated June 26, 2015[4] ........................................................................................ Tab F

---

[1] The copy of this order included in the record does not contain all pages of the order. Appellant is requesting a supplemental clerk's record containing a complete copy of this order.

[2] Appellant is requesting a supplemental clerk's record containing this letter.

[3] Appellant is requesting a supplemental clerk's record containing this application.

[4] Appellant is requesting a supplemental clerk's record containing this letter.

**Case** **Page(s)**

*Baumgarten v. Frost*,
186 S.W.2d 982 (Tex. 1945) ..............................................................21

*Bergeron v. Sessions*,
561 S.W.2d 551 (Tex. App.—Dallas
1977, writ ref'd n.r.e.)...............................................................*passim*

*Carlton v. Bos*,
281 S.W.2d 131 (Tex. Civ. App.—Beaumont
1955, no writ)......................................................................................17

*Clay Expl., Inc. v. Santa Rosa Operating, LLC*,
442 S.W.3d 795 (Tex. App.—Houston
[14th Dist.] 2014, no pet.)..................................................................12

*Congleton v. Shoemaker*,
09-11-00453-CV, 2012 WL 1249406
(Tex. App.—Beaumont Apr. 12, 2012, pet. denied) ..........................27

*Cont'l Homes Co. v. Hilltown Prop. Owners Ass'n, Inc.*,
529 S.W.2d 293 (Tex. Civ. App.—Fort Worth
1975, no writ)......................................................................................17

*Elizondo v. Krist*,
15 S.W.3d 259 (Tex. 2013).................................................................24

*In re Estate of Herring*,
983 S.W.2d 61 (Tex. App.—Corpus Christi
1998, no pet.) ......................................................................................16

*Ford Motor Co. v. Chacon*,
370 S.W.3d 359 (Tex. 2012) ........................................................11, 13

*Harmon v. Schoelpple*,
730 S.W.2d 376 (Tex. App.—Houston
[14th Dist.] 1987, no writ) ..................................................................16

*Harrington v. Schuble*,
608 S.W.2d 253 (Tex. Civ. App.—Houston
[14th Dist.] 1980)................................................................................27

*Ex parte Hodges*,
625 S.W.2d 304 (Tex. 1981) ....................................................12, 13, 14

*Hodges v. Peden*,
634 S.W.2d 8 (Tex. App.—Houston
[14th Dist.] 1982, no writ) ....................................................11, 23, 28

*King Land & Cattle Corp. v. Fikes*,
414 S.W.2d 521, 525 (Tex. Civ. App.—Fort Worth
1967, writ ref'd n.r.e.)................................................................16

*Kotz v. Murariu*,
04-12-00420-CV, 2013 WL 6205457
(Tex. App.—San Antonio Nov. 27, 2013, no pet.)......................23, 24

*Mid-Continent Supply Co. v. Conway*,
240 S.W.2d 796 (Tex. Civ. App.—Texarkana
1951, writ ref'd n.r.e.)................................................................12, 13

*Moyer v. Moyer*,
183 S.W.3d 48 (Tex. App.—Austin
2005, no pet.) ...............................................................11, 22, 25, 27

*O'Connor v. O'Connor*,
320 S.W.2d 384, 391 (Tex. App.—Dallas
1959, writ dism'd)................................................................16

*Patton v. Powell*,
93 S.W.2d 800 (Tex. Civ. App.—Fort Worth
1936, writ dism'd)................................................................20

*Reiss v. Reiss*,
118 S.W.3d 439 (Tex. 2003) ....................................................12, 19

*Rogers v. Boykin*,
286 S.W.2d 440 (Tex. Civ. App.—Eastland
1956, no writ)................................................................17

## STATUTES AND RULES

Tex. Civ. Prac. & Rem. Code § 64.023 ....................................................16

Tex. R. App. P. 33.1(d) ..............................................................................22

## OTHER AUTHORITIES

1A West's Tex. Forms,
   Cred. Rem. & Debt. Rights § 15:4 (4th ed.) .......................................28

65 Am. Jur. 2d Receivers § 236 (2015) ...................................................21

75 C.J.S. Receivers
   § 136.................................................................................................12
   § 158.................................................................................................20
   § 166...........................................................................................13, 18
   § 185...........................................................................................13, 18

## STATEMENT OF THE CASE

*Nature of the case*        This case concerns the propriety of an award of fees to a receiver (and his law firm) appointed to manage a testamentary trust.

*Course of proceedings*        Receiver and his law firm filed an application for payment of receiver's fees. In response, Mr. Benson filed objections to the requested fees. No hearing was held on the application.

*Trial Court's Disposition*        On July 8, 2015, the probate court signed orders awarding the entirety of the requested receiver fees. *See* Tabs A & B.

## STATEMENT REGARDING ORAL ARGUMENT

Mr. Benson requests oral argument. Oral argument will aid the decisional process, as a detailed discussion of the facts will make it clear that the probate court's orders lacked any basis in law or fact.

# ISSUES PRESENTED

I.      Whether a receiver may charge the receivership estate for actions (1) taken before he took office or (2) explicitly forbidden by the terms of his appointment.

II.     Whether proof of a "reasonable attorney's fee" constitutes evidence of a "reasonable receiver's fee."

III.    Whether a court may award a receiver the full amount of his fees without a final accounting and discharge of the receivership.

## INTRODUCTION

In early February, the probate court held a two-day hearing on petitioner's request for a temporary injunction. At the conclusion of that hearing, the court announced that it would appoint receivers to take over management of the Shirley L. Benson Testamentary Trust. Mr. Benson, the trustee of the Trust, was shocked. He had received no notice that the probate court was even considering appointing receivers. But as Mr. Benson would soon learn, the court had been working on its undisclosed plan for some time.

When the receivers produced their billing records in connection with their request for payment of their fees, many irregularities came to light. Not only had the probate court been communicating *ex parte* with the receivers regarding their contested fee applications, but the bills show that the receivers had charged the Trust thousands of dollars for work done well before the trial court signed an order appointing them. They also billed for work done before their appointment became effective and for work the probate court specifically excluded from their authority.

Mr. Benson objected to the payment of these fees. But the probate court awarded the full request for fees to both of the receivers—Phil Hardberger (and his firm, Dykema Cox Smith) and Art Bayern. Mr. Benson appealed those fee awards. The dispute over Mr. Bayern's fees has been resolved. Accordingly, this appeal concerns only the fees awarded to Mr. Hardberger ("Receiver") and his firm (collectively, "Appellees").

## STATEMENT OF FACTS

Appellees' actions in this case are hard to reconcile with the law. While receivers are certainly entitled to payment for their service, it is axiomatic that they are only entitled to payment for service that is properly authorized by the court and in conformity with statutory requirements. But as detailed below, Appellees have sought hundreds of thousands of dollars for unauthorized work.

### Appellees start billing the Trust before any hearing is ever held.

While Mr. Benson had no idea that the probate court was even considering the appointment of receivers, for Appellees, the issue was never in doubt. Receiver began charging the Trust for his actions five days before the probate court signed the order appointing temporary co-receivers. CR 277; CR 77. His law firm, Dykema Cox Smith ("the Firm"), also began billing time for this case before the probate court began the hearing on the temporary injunction. CR 289; CR 28.

For example, on February 3—one day before the hearing—the Firm billed $5,847.50 to the Trust. CR 289. These entries include, among other things: "meeting with P. Hardberger regarding background facts of the Shirley L. Benson testamentary trust dispute" and "preliminary review of assets in controversy." *Id.* Thus, while Mr. Benson's attorneys worked diligently to defend against Petitioner's requested temporary injunction, Appellees were already at work preparing to take control of the Trust.

The entries for February 4—which was the first day of the temporary injunction hearing—seek compensation for: "Meeting with P. Hardberger regarding his powers and duties as court-appointed receiver and issues regarding his fees and compensation (.5)," "Analyz[ing] issues relating to appointment of receivers (4.0)," and "Work[ing] on Order Appointing Receiver (1.5)." The bill for this time came to $3,393.50. CR 289-290..

**Appellees continue to bill the Trust for time before their appointment.**

At the close of evidence on February 5, 2015, the probate court announced—for the first time—that it intended to appoint temporary co-receivers to manage the Trust during litigation. The Firm, however, was not surprised, as it had already managed to charge the Trust an additional $4,163.50 that day. CR 290. The Receiver also personally charged the Trust $600 before the probate court's February 5 announcement, as he "[a]ttend[ed] [the] Court session at request of Judge Tom Rickhoff (1.0)." CR 277.

Once the probate court announced its intent to appoint temporary co-receivers, the Receiver charged the Trust an additional $1,200 that same afternoon. *Id.*. Of this amount, $600 was for meeting with the attorneys, who had just become aware that a receivership was being considered. *Id.* And remarkably, the Receiver charged an additional $600 for appearing before the media or, as his bill puts it:

"interview with several members of the press including the San Antonio Express-News, Bloomberg News, New Orleans Advocate, and others." *Id.*

While the probate court had announced its intention to appoint the Receiver on February 5, it informed the parties that it would not sign an order until February 9. Despite this fact, Appellees continued to work the case and bill the Trust for their time, charging the Trust an additional $11,559 on February 6, 7, and 8. CR 277, 290-293.

Taken together, Appellees charged the Trust $26,261 for work performed before the probate court ever signed an order authorizing them to take any action on behalf of the Trust—$6,545 of those fees were incurred before the hotly contested hearing began and an additional $14,702 were for actions taken before the probate court announced its intent to appoint a temporary receiver.

**Appellees continues to bill the Trust for time spent
before the appointment became effective.**

On Monday, February 9, the probate court finally signed an order regarding the temporary receivership, styled the "Order Suspending Trustee & Appointing Temporary Co-Receivers with Restrictions." CR 70. While this order granted Receiver the power to act as a Co-Receiver over the Trust's assets, it did not take effect immediately. Rather, it was expressly conditioned upon Receiver filing the required bond. CR 72 ("On filing their bonds, together with the oath prescribed by law, the Receivers are authorized, subject to the control of this Court, to do any

and all acts necessary to the proper and lawful conduct of the Receivership . . . .")
(emphasis added). The order was amended several times, eventually resulting in the "Second Amended Order Granting Injunction, Suspending Trustee, and Appointing Limited Temporary Co-Receivers with Restrictions" that currently governs the Co-Receivers' conduct. CR 125.

Continuing to disregard the details of his authorization to act as Co-Receiver, Appellees immediately began aggressively exercising their powers without bothering to file the required bond. By the time Receiver finally satisfied the pre-conditions of his appointment on February 20, 2015, Appellees had charged an additional $102,411 to the Trust. CR 278-282; CR 293-308. In all, Appellees charged the Shirley L. Benson Testamentary Trust $129,872 before they were authorized to take a single action on the Trust's behalf.

### Appellees bill the Trust for actions they were explicitly forbidden to undertake.

In addition to seeking payment for actions taken before Receiver was authorized to do anything, Appellees also sought payment for actions that were explicitly forbidden by the probate court's order. The order provides that "the powers and duties of the temporary co-receivers are prescribed by this Order." CR 76. It also contains a complete list of the powers granted to the Co-Receivers. CR. 73-76. That list, however, does not include the power to file a plea in intervention without the probate court's consent. Indeed, as stated in both the First Amended

Order—signed February 18, 2015—and the Second Amended Order, it is only "[w]ith the Court's consent" that the receivers may "institute, prosecute, compromise, adjust, intervene in, or become party to such actions or proceedings in state or federal courts." CR 92; Tab C at 7, ¶ 5(*l*) (emphasis added).

Despite the order's unambiguous language, Appellees researched, drafted, and filed a plea in intervention on March 2, 2015. CR 128. They did so without requesting or obtaining the probate court's consent. In fact, the probate court specifically rejected Appellees' request to file the plea in a letter dated March 9, 2015, stating that: "the costs of [the receivers'] new efforts no longer can equal [their] reasonable benefits" and that it "should not be [the receivers'] Syspusian task" to pursue issues properly resolved in other proceedings. Tab D at 1. The probate court concluded by instructing Appellees to "[s]ubmit your current bill and 30 day report, then stop." Tab D at 1, 2. Despite this letter, Appellees refused to voluntarily dismiss the unauthorized plea for weeks—until March 24, 2015: the same day Trustee filed its motion to dismiss the plea in intervention with prejudice.

Nonetheless, Appellees sought fees for filing the plea in intervention—even though it violated the express terms of Appellees' authority, was explicitly rejected by the probate court, and was eventually voluntarily dismissed by Appellees themselves. Their fee application sought $64,778.28 for performing this work. *See* CR 281-82, 284, 298-320.

**The probate court approves the fee requests after undisclosed,
*ex parte* meetings with the receivers.**

On June 26, 2015 the Co-Receivers filed their fee applications. CR 246. That same day, Judge Rickhoff held a conference with the Co-Receivers on their "application for fees as expenses." Tab E at 2. Within hours, the probate court sent a letter to the parties, stating that it had reviewed the fee application and would be "authorizing payment of the debts in 10 days." Tab F at 2.

Mr. Benson filed his "Objections to Payment of Receivers' Certain Fees and Costs" on July 6, 2015. CR 426. The day after Mr. Benson filed his objections, Judge Rickhoff held a telephone conference with the Co-Receivers regarding those objections. Tab E at 3. Mr. Benson was not included in the conference with Judge Rickhoff.

The following day, Judge Rickhoff left the Co-Receivers a telephone message regarding their pending applications and held yet another "telephone conference" with the Co-Receivers and "Liz McDevitt, Probate Auditor on pending applications, including bills from . . . Phil Hardberger, Dykema Cox Smith, Arthur Bayern, Langley & Banack." Tab E at 4. Mr. Benson was not included in these conferences, either.

The Co-Receivers' fees—including $333,786.50 for Appellees—were approved in full later that day. CR 471-474. Mr. Benson was never informed of that decision. It was not until the Co-Receivers and their attorneys attempted to

withdraw the funds from the Trust's bank accounts—nearly one month later—that Mr. Benson became aware that the probate court had granted the receivers' applications for nearly half a million dollars in fees.

## Mr. Benson appeals the probate court's order.

Unfortunately, the numerous *ex parte* communications[1] and a minimal adherence to procedural safeguards complicated this case. Indeed, it was the probate court's failure to observe basic procedural safeguards—such as choosing receivers without holding a receivership hearing—that led Mr. Benson to file this appeal.

Mr. Benson alleges that the probate court abused its discretion by awarding Appellees the full amount of their fees. Specifically, he complains that (1) the majority of Appellees' fees were incurred for actions outside the scope of his authority, (2) there is no evidence to support the conclusion that Receiver's $600 per hour fee is reasonable, and (3) it was legal error to grant Receiver the full amount of his fees without also dissolving the receivership.

---

[1] This is not to suggest that a trial court may never confer privately with an appointed receiver. But such *ex parte* communications cannot be justified when they concern a dispute over a receiver's request for payment of his own fees.

## SUMMARY OF ARGUMENT

Following an *ex parte* meeting on Appellees' <u>contested</u> motion for payment of receivers' fees, the probate court approved $333,786.50 in fees to Appellees for approximately four-and-a-half months of work. More than one-third of that amount—$129,872.00—was for work conducted <u>before</u> Appellees had any authority to act as receivers. The court approved an additional $64,778.28 in fees for work associated with Appellees' <u>ill-fated</u> plea in intervention, which they were explicitly forbidden from filing under the terms of the appointment. In total, more than half of the fees paid to Appellees were for actions taken outside the term of Receiver's appointment and the scope of his authority. This does not include the charges for Appellees' press conferences—which provided no value to the Trust. The orders should be reversed as to the fees awarded for these unauthorized services.

The probate court's orders should also be reversed for two additional reasons. First, there is no evidence to support Receiver's right to charge $600 per hour for his services as receiver. Second, the probate court awarded Receiver the full value of his services without discharging the receivership—a clear violation of the laws of the State of Texas.

## STANDARD OF REVIEW

Courts "review [a] trial court's fee award for an abuse of discretion, which occurs when the trial court rules (1) arbitrarily, unreasonably, or without regard to guiding legal principles, or (2) without supporting evidence." *Ford Motor Co. v. Chacon*, 370 S.W.3d 359, 362 (Tex. 2012). A receiver's fees should be sufficient to induce competent persons to serve. *Bergeron v. Sessions*, 561 S.W.2d 551, 555 (Tex. App.—Dallas 1977, writ ref'd n.r.e.). However, "receiverships should also be administered as economically as possible, and fees for services performed by these court officers should be moderate rather than generous." *Id.*

A receiver's fee should be measured by the value of the services rendered, and there must be evidence to establish the reasonableness of the fee. *Moyer v. Moyer*, 183 S.W.3d 48, 57–58 (Tex. App.—Austin 2005, no pet.). To determine the value of a receiver's services, courts consider: (1) the nature, extent and value of the administered estate; (2) the complexity and difficulty of the work; (3) the time spent; (4) the knowledge, experience, labor and skill required of, or devoted by the receiver; (5) the diligence and thoroughness displayed; and (6) the results accomplished. *Bergeron*, 561 S.W.2d at 554–55. When a receiver also acts as an attorney, the receiver's fees for his services as attorney to the receivership should be set separately from the fees for his services as a receiver. *Hodges v. Peden*, 634 S.W.2d 8, 11 (Tex. App.—Houston [14th Dist.] 1982, no writ).

**ARGUMENT**

On July 8, 2015, the probate court awarded Appellees $333,786.50 in receiver's fees for approximately four-and-a-half month's worth of work. Its conclusion that this constituted a reasonable fee for the value delivered is a clear abuse of discretion, lacking any basis in guiding legal principles or the evidence presented in this case.

**I. It is an abuse of discretion to award fees for activities outside the scope of Appellees' appointment.**

No principle of law can justify the probate court's decision to award Appellees fees for actions taken before Receiver was appointed. It is well-established that "[a] receiver has only that authority conferred by the Court's order appointing him." *Ex parte Hodges*, 625 S.W.2d 304, 306 (Tex. 1981); *see also* 75 C.J.S. Receivers § 136 ("A receiver must not exceed the authority granted by the court."); *Clay Expl., Inc. v. Santa Rosa Operating, LLC*, 442 S.W.3d 795, 800 (Tex. App.—Houston [14th Dist.] 2014, no pet.). An order appointing a receiver and defining his powers is interpreted "in light of the literal language used if that language is unambiguous." *Reiss v. Reiss,* 118 S.W.3d 439, 441 (Tex. 2003) (internal quotation marks omitted). The binding effect of a receiver's actions "are to be tested by his authority"—as laid out in the court's order appointing him—"and not by his good faith." *Mid-Continent Supply Co. v. Conway*, 240 S.W.2d 796, 803 (Tex. Civ. App.—Texarkana 1951, writ ref'd n.r.e.).

"These rules are elemental in receiverships." *Id.* Further, "[a]n estate in receivership is not chargeable for services rendered or expenses incurred by a receiver while acting outside the authority conferred on him or her." 75 C.J.S. Receivers § 166; *see also id.* § 185 ("A receiver will be personally charged with the resulting loss when it goes outside the plain letter of its authority as contained in the governing statutes and the orders of the court by which appointed even though acting in bona fide for what it believes to be in the best interests of the estate.").

Appellees' fee application sought compensation for actions that were either (1) taken before Receiver had authority to act on the Trust's behalf or (2) in violation of the unambiguous restrictions on his authority. The probate court clearly exceeded the bounds of discretion by allowing Appellees to charge the Trust for unauthorized actions.

### A. Appellees began charging the Trust before any hearing was held on the appointment.

The probate court abused its discretion by awarding Appellees $26,261 in fees for actions taken before February 9, 2015. "A receiver has only that authority conferred by the Court's order appointing him." *Ex parte Hodges*, 625 S.W.2d 304, 306 (Tex. 1981). As such, a trial court abuses its discretion when it awards a receiver fees for activities performed without an appointment order. *See Ford Motor Co. v. Chacon*, 370 S.W.3d 359, 363 (Tex. 2012) ("Therefore, the trial court abused

its discretion by awarding [guardian ad litem] fees for activities that he performed without a written appointment order.").

On February 4 and 5, the probate court conducted a two-day hearing on Petitioner's motion for temporary injunction. At the conclusion of that hearing, the court announced that it was considering appointing temporary receivers to administer the Trust pending litigation. However, it was not until Monday, February 9, that the probate court issued its "Order Suspending Trustee & Appointing Temporary Co-Receivers with Restrictions." CR 77. This is the first document purporting to grant Appellees any power to act on behalf of the Trust. *Ex parte Hodges*, 625 S.W.2d at 306 ("[a] receiver has only that authority conferred by the Court's order appointing him.").

Thus, Appellees were not authorized to charge the Trust for their services until after the probate court entered its order on February 9, 2015. Any award of fees before that date would be an abuse of discretion.

The record demonstrates that the probate court allowed Appellees to charge the Trust for services performed before the court appointed the temporary co-receivers. The first entry submitted by Appellees in this case is dated February 2, 2015—two days before the probate court began its hearing on whether to grant a temporary injunction—seeking $697.50 in compensation. The record also reveals charges against the Trust on February 3, 4, 5, 6, 7, and 8.

Taken together, the probate court's abuse of discretion allowed Appellees to collect $26,261 in receiver's fees for services performed without any authority. Of these fees, $6,545 were incurred before the commencement of the court's hotly contested hearing temporary injunction hearing, and an additional $14,702 were for actions taken before the probate court ever announced its intent to appoint a temporary receiver. Because a receiver derives his authority solely from the text of a court order and cannot charge a Trust for acts outside its authority, the probate court abused its discretion by awarding Appellees fees for activities performed without a written order.

**B.      Appellees likewise cannot charge the Trust for services rendered before the appointment took effect.**

Although the probate court's February 9 order granted Appellees authority to act on the Trust's behalf, that order did not take effect immediately. Rather, it was expressly conditioned upon Receiver, his Co-Receiver Art Bayern, and Petitioner— Renee Benson—filing their bonds and executing the required oaths. CR 72 ("On filing their bonds, together with the oath prescribed by law, the Receivers are authorized, subject to the control of this Court, to do any and all acts necessary to the proper and lawful conduct of the Receivership . . . .") (emphasis added). Thus, the order granting Receiver his power over the Trust makes it clear that he is not authorized to take any action until all appropriate bonds are filed.

Texas law plainly requires the Co-Receivers to post bond before exercising their authority. Section 64.023 of the Texas Civil Practice and Remedies Code provides that:

> Before a person assumes the duties of a receiver, he must execute a good and sufficient bond that is:
>
> (1)  approved by the appointing court;
>
> (2)  in an amount fixed by the court; and
>
> (3)  conditioned on faithful discharge of his duties as receiver in the named action and obedience to the orders of the court.

Tex. Civ. Prac. & Rem. Code § 64.023 (emphasis added).

The posting of both the applicant's and receiver's bonds are not a mere formality or technicality. Texas courts have long held that the "[f]iling of the applicant's bond is a condition precedent to the right of the receiver to function as such." *In re Estate of Herring*, 983 S.W.2d 61, 64 (Tex. App.—Corpus Christi 1998, no pet.) (citing *King Land & Cattle Corp. v. Fikes*, 414 S.W.2d 521, 525 (Tex. Civ. App.—Fort Worth 1967, writ ref'd n.r.e.)); *see also Harmon v. Schoelpple*, 730 S.W.2d 376, 379 (Tex. App.—Houston [14th Dist.] 1987, no writ) ("The requirement of a bond is an essential element of receivership. The absence of a bond is error.") (citing *O'Connor v. O'Conn*or, 320 S.W.2d 384, 391 (Tex. App.—Dallas 1959, writ dism'd)).

A trial court commits reversible error if it appoints a receiver without setting the amount of bond and requiring that the bond be posted. *Cont'l Homes Co. v. Hilltown Prop. Owners Ass'n, Inc.*, 529 S.W.2d 293, 295 (Tex. Civ. App.—Fort Worth 1975, no writ) ("The trial court committed reversible error in appointing a receiver to take charge of defendants' business and property without setting the amount of the applicant's bond and without requiring the applicant to post an applicant's bond as is required by Rule 695a."). A trial court can correct its error by requiring the receiver and applicant to post the necessary bonds before an appeal is taken. *Carlton v. Bos*, 281 S.W.2d 131, 132 (Tex. Civ. App.—Beaumont 1955, no writ) ("The order appointing the receiver without requiring a bond by the applicant was not void, but merely voidable. It was an error which could be corrected by the trial court, and this has been done.").[2] In such a case, the initial defect does not render the appointment void, but merely "prevents the appointment from becoming effective until the oath and bond are filed." *Rogers v. Boykin*, 286 S.W.2d 440, 443

---

[2] A further exception to this rule—inapplicable here—allows a later-filed bond to cure an otherwise deficient receivership order from the date of the original application if the court's order specifically finds that such relief is warranted. *See Bos*, 281 S.W.2d at 132 ("Said order provided that such bond filed by appellee should be effective from the date when the application for receivership was filed."). However, because nothing in the probate court's order suggests that the bond "should be effective from the date when the application for receivership was filed," the general rule applies. *See Rogers*, ("the failure of a receiver to file the required oath and bond . . . prevents the appointment from becoming effective until the oath and bond are filed.").

(Tex. Civ. App.—Eastland 1956, no writ). Accordingly, Receiver's appointment did not become effective until the bonds were posted.

Despite the fact that the appointment did not take effect until February 20, the probate court granted the application for $129,872[3] in fees incurred before that date, *i.e.*, before Receiver posted the bonds required as a precondition of his authority. This fact alone constitutes an abuse of discretion, as "[a]n estate in receivership is not chargeable for services rendered or expenses incurred by a receiver while acting outside the authority conferred on him or her." 75 C.J.S. Receivers § 166; *see also id.* § 185 ("A receiver will be personally charged with the resulting loss when it goes outside the plain letter of its authority as contained in the governing statutes and the orders of the court by which appointed even though acting in bona fide for what it believes to be in the best interests of the estate.").

These fees were incurred before Receiver had authority to take <u>any action</u> on behalf of the Trust. Because "[a]n estate in receivership is not chargeable for services rendered or expenses incurred by a receiver while acting outside the authority conferred on him or her," the probate court abused its discretion by reimbursing Appellees for their *ultra vires* actions.

---

[3] Appellees incurred $102,411 in fees between February 9—the date of the first order appointing Hardberger as Co-Receiver—and February 20—the date the order was rendered effective by the filing of Hardberger's proper bonds. The remaining $27,461 in fees were incurred before the February 9 order, and cannot be collected for the reasons discussed *supra*, Part I.B.

**C. Appellees' plea in intervention was forbidden by the explicit terms of the appointment and provided no value to the Trust.**

The probate court further abused its discretion by granting Appellees $64,778.28 for drafting and filing their plea in intervention—an action that (1) was explicitly forbidden by the terms of their appointment and (2) provided absolutely no benefit to the Trust. Because an order appointing a receiver and defining his powers is interpreted "in light of the literal language used if that language is unambiguous," *Reiss v. Reiss,* 118 S.W.3d 439, 441 (Tex. 2003) (internal quotation marks omitted), the prohibition places such action squarely outside Appellees' authority, and therefore beyond their right to seek compensation from the Trust.

The court's Second Amended Order provides that "[t]he powers and duties of the temporary co-receivers are set forth in this Order," Tab C at 1, and that "the powers and duties of the temporary co-receivers are prescribed by this Order." Tab C at 7. The order also contains a complete list of the powers granted to the Co-Receivers. *See* Tab C at 5-7. That list, however, does <u>not</u> include the power to file a plea in intervention without the Court's consent. Indeed, as stated in the Order, it is only "<u>[w]ith the Court's consent</u>" that the Co-Receivers may "institute, prosecute, compromise, adjust, <u>intervene in</u>, or become party to such actions or proceedings in state or federal courts." Tab C at 7, ¶ 5(*l*) (emphasis added); *see also* CR 92 (First Amended Order, February 18, 2015).

Despite this unambiguous language, Appellees filed a plea in intervention without requesting or obtaining the probate court's consent. Lest there be any doubt about the impropriety of Appellees' filing, the probate court wrote Appellees a letter explicitly denying consent to pursue the intervention, stating that: "the costs of [the Co-Receivers'] new efforts no longer can equal [their] reasonable benefits" and that it "should not be [the Temporary, Limited Co-Receivers'] Syspusian task" to pursue issues properly resolved in other proceedings. Tab D at 1. The probate court concluded by instructing the Co-Receivers to "[s]ubmit your current bill and 30 day report, then stop." Tab D at 1, 2.

That the majority of these fees—$62,378.28—are sought by the Firm, rather than Receiver, is of no importance. "So well settled is the rule that a receiver has no authority to deal with or expend the trust property without the authorization or approval of the court that all persons dealing with a receiver are bound to take notice of the extent of and the limitations upon his authority, and so deal with him at their peril in so far as concerns the liability of the trust estate." *Patton v. Powell*, 93 S.W.2d 800, 803 (Tex. Civ. App.—Fort Worth 1936, writ dism'd) (quoting 53 C.J.S. § 158).

Specifically, the "[s]ervices of an attorney outside the authority of a receiver to employ may not be charged by the receiver against the estate in receivership. The rule has been expressed that there must be a real occasion for the employment of

counsel, and if there is no necessity shown for the employment, the court will not ordinarily allow his or her fees as a necessary expense." 65 Am. Jur. 2d Receivers § 236 (2015). The rationale of this rule is long-standing and sound: "One dealing with a receiver is charged with the knowledge of the law that the authority of the receiver is limited to that given by the court." *Baumgarten v. Frost*, 186 S.W.2d 982, 987 (Tex. 1945). The rule applies with full force where, as here, the court's order explicitly prohibited Appellees from filing a plea in intervention without the court's approval.

Thus, Appellees were plainly barred from filing the plea in intervention by the text of the probate court's order. Appellees proceeded with the intervention in spite of these obvious facts, and then sought compensation for this clear violation of the Receiver's authority. Moreover, the application for fees contains absolutely no demonstration of how this barred motion—which was rejected by both the probate court and the Western District of Texas[4]—provided any benefit to the Trust. Because there is no evidence demonstrating that this motion was either (1) within the scope of Appellees' authority or (2) provided any benefit to the Trust, it was an abuse of discretion to grant Appellees $64,778.28 for its preparation and filing.

---

[4] In a related action attempting to remove this case to federal court, the Western District explicitly concluded that: "The Co-receivers . . . had no justiciable interest in the action, and their intervention was improper under Texas law." *Benson v. Benson*, Doc. 25, No. 5:15-cv-202, at 9 n.3 (W.D. Tex. June 9, 2015).

20

**II. Nothing in the record can support the probate court's conclusion that Receiver's hourly rate is reasonable.**

There is no evidence to support the probate court's finding that $600 per hour is a reasonable receiver's fee.[5] Because "[t]here must be evidence to establish reasonableness of the [receiver's] fee," *Moyer v. Moyer*, 183 S.W.3d 48, 58 (Tex. App.—Austin 2005, no pet.), the probate court abused its discretion by failing to require <u>any</u> <u>evidence</u> that Receiver's fee as a receiver was reasonable.

The only evidence presented to the probate court concerned the reasonability of Receiver's hourly rate for <u>legal</u> work. However, proof of a reasonable legal rate is not proof of a reasonable <u>receiver's</u> fee—which must be lower, as it does not require legal skill. Because Receiver offered no evidence that $600 per hour is a reasonable rate <u>for a receiver</u>, the probate court abused its discretion by awarding his fees.

**A. Legal fees are not evidence of receiver's fees.**

The probate court erred by confusing a reasonable fee for <u>legal</u> work with the reasonable fee for <u>receivership</u> work. Although a receiver may also serve as an attorney, "[t]he receiver's compensation as receiver and attorney must be determined separately, for a receiver is <u>not entitled to compensation at a legal rate for work</u>

---

[5] Because Receiver's fees were determined in a bench proceeding, "a complaint regarding the legal or factual insufficiency of the evidence . . . may be made for the first time on appeal in the complaining party's brief." Tex. R. App. P. 33.1(d).

which does not require legal skills." *Bergeron¸* 561 S.W.2d at 554 (emphasis added); *see also Hodges*, 634 S.W.2d at 11 ("[T]he record should affirmatively reflect the trial court's determination of the capacity in which the receiver performed services."); *Kotz v. Murariu*, 04-12-00420-CV, 2013 WL 6205457, at *1-3 (Tex. App.—San Antonio Nov. 27, 2013, no pet.) ("Bresnahan was obligated to separately set out the value of his services as the receiver and as an attorney to the receivership because he was not entitled to compensation at a rate for work that did not require legal skills.") (emphasis added).

Because receiver's fees must be determined separately from legal fees, Receiver had the burden of demonstrating that $600 per hour was a reasonable fee for a receiver under the circumstances. He did not present any evidence to meet that burden. The only evidence supporting his rate of $600 per hour is the affidavit of David Kinder, which relies explicitly on Receiver's reputation as "a distinguished 50-year lawyer." CR 335-36. Indeed, paragraph 2 asserts that Mr. Kinder is "familiar with the reasonable costs of necessary legal services in Bexar County, Texas"—with no mention of his familiarity with receiver's fees. Paragraph 4 considers the "work performed by Mr. Hardberger" and states that "[a]ll of the following factors have been considered in determining attorney's fees." CR 335 (emphasis added). The affidavit then lists the familiar factors identified in Rule 1.04 of the Texas Disciplinary Rules of Professional Conduct. *Id*. *See* TDRPC 1.04(b)(1)-(8).

The simple statement that "[t]hese rates and all of the rates that are shown in the invoices are reasonable billing rates for litigation <u>and receivership</u> services of this nature for attorneys in Bexar County, Texas with comparable experience," is insufficient to satisfy Receiver's burden to demonstrate that $600 per hour is a reasonable rate for receivership services. Unlike his statement regarding attorney's fees, the affidavit "lack[s] . . . a demonstrable and reasoned basis on which to evaluate his opinion" that $600 per hour is a reasonable rate for receiver's fees. *See Elizondo v. Krist*, 15 S.W.3d 259, 265 (Tex. 2013).

Moreover, both Mr. Kinder's affidavit and Receiver's billing records fail to distinguish between the value and amount of legal services versus receivership services, as required by Texas law. *See, e.g.*, *Bergeron¸* 561 S.W.2d at 554; *Kotz v. Murariu*, 2013 WL 6205457, at *1-3. But more importantly, it would allow Receiver to receive legal compensation for work that does not require legal skills. This is precisely the result Texas courts seek to avoid by requiring that legal and receiver fees be determined separately. Allowing a $600 per hour rate would be particularly egregious where, as here, Receiver's $600 per hour rate is significantly higher than the rate charged by <u>any</u> of the attorneys associated with the receivership. This means that Receiver is currently charging the Trust <u>more for non-legal work</u> than for legal work. While this is undoubtedly a lucrative outcome for Receiver, it flies in the face of Texas public policy and cannot stand under the laws governing receiverships.

Because Receiver presented no evidence that $600 is a reasonable hourly receiver's rate, it was an abuse of discretion to grant those fees.

**B.     Appellees' requested fees are unreasonable.**

Nothing else in the record can support the probate court's decision that Appellees' fee was appropriate. The cornerstone of determining a receiver's fees is the value of the services rendered. *Moyer*, 183 S.W.3d at 57. "The controlling factors in ascertaining this value" are:

(1)     the nature, extent and value of the administered estate;

(2)     the complexity and difficulty of the work;

(3)     the time spent;

(4)     the knowledge, experience, labor, and skill required of, or devoted by the receiver;

(5)     the diligence and thoroughness displayed; and

(6)     the results accomplished.

*Bergeron*, 561 S.W.2d at 554-55.

The unreasonableness of Appellees' fee is immediately evident from the fact that they sought to charge $333,786.50 for four-and-a-half months of managing a Trust Mr. Benson managed <u>for free</u> for over 30 years. However, applying the factors outlined in *Bergeron v. Sessions* underscores the propriety of this conclusion. Contrary to Appellees' contention, the Shirley L. Benson Testamentary Trust is not complicated. It contains six items of real property, investments in three businesses, and three bank accounts. CR 267. That is all. Nor is the Trust difficult to

administer. Besides attending board meetings for Lone Star Bank, the Co-Receivers' duties consist solely of (1) collecting income from the real property—which it would distribute to the income beneficiary, Tom Benson, if he had ever requested a disbursement—and (2) paying taxes and insurance when due. A clear indicator of the Trust's simplicity is the fact that, in the five months since this litigation began, the Co-Receivers have only requested permission to pay four bills, none of which were recurring obligations owed by the Trust. CR 209, 215, 411, 464.

Unlike receivers presiding over the liquidation of an estate, Appellees did not have to oversee the sale of any assets, defend the Trust against creditors, or undertake any of the activities that generally render their task "complex" or "difficult." The truth of the matter is that the Appellees spent 685 hours investigating a twelve asset estate and writing a 17-page report; a report that provided no new information.

There is no rational scenario under which Appellees' value to the Trust can even approach the $333,786.50 requested in their application. As discussed, much of Appellees' display of "diligence"—at a cost of $194,650.28—was spent on activity outside the scope of the appointment. Indeed, $64,778.28 was spent on drafting and filing a plea in intervention that was explicitly forbidden by the plain text of the probate court's order at the time it was filed. Moreover, Mr. Benson cannot conceive

of any possible value provided to the Shirley L. Benson Testamentary Trust from the 10.6 hours—at a total cost of $6,360—Receiver spent airing the details of Mr. Benson's familial dispute to various media outlets.

### III. Appellees are not entitled to full payment until after a full accounting and discharge of the receivership.

The probate court also abused its discretion by granting Appellees the full amount of their fees. It is clearly established that "[p]rior to a final accounting and discharge of the receiver, only a partial advance toward a final fee can properly be made." *Bergeron*, 561 S.W.2d at 553; *Moyer*, 183 S.W.3d at 58 ("prior to a final accounting and discharge of the receiver, only a partial advance toward a final fee may be made.").[6] This rule applies to both the receiver and the professionals in his employ, such as accountants and attorneys. *Bergeron*, 561 S.W.2d at 553 ("executor first argues that the trial court erred in allowing any full award of fees to the receiver and his accountant prior to a final accounting and discharge of the receiver. We agree."); 1A West's Tex. Forms, Cred. Rem. & Debt. Rights § 15:4 (4th ed.) ("It is error for a trial court to allow a full award of fees to the receiver and his or her accountant prior to a final accounting and discharge of the receiver. Prior to a final

---

[6] *See also Harrington v. Schuble*, 608 S.W.2d 253, 256 (Tex. Civ. App.—Houston [14th Dist.] 1980) ("The full award of receiver's fees should not be made until there has been a final accounting and discharge. We therefore hold that there must be a final report and an accounting before the receiver's fees are to be paid."); *Congleton v. Shoemaker*, 09-11-00453-CV, 2012 WL 1249406, at *5 (Tex. App.—Beaumont Apr. 12, 2012, pet. denied) ("Before a final accounting and the receiver's discharge, 'only a partial advance toward a final fee may be made because the reasonableness of the fee is measured in light of the value of the receiver's work.'").

accounting and discharge, only a partial advance toward a final fee can properly be made.").

Allowing the full payment of a receiver's fees in violation of this rule is requires reversal. *Hodges v. Peden*, 634 S.W.2d 8, 10-11 (Tex. App.—Houston [14th Dist.] 1982, no writ) ("We hold that prior to the final accounting, report and the discharge of the receiver, only a partial advance on the final fee can properly be made. . . . The trial court thus erred in making this award when the receivership had not been terminated. We, therefore, reverse and remand this cause for further proceedings in the trial court."). Moreover, any "partial advance should be materially less than the value of the services rendered by the receiver prior to the allowance." *Bergeron*, 561 S.W.2d at 553 n.1.

The probate court disregarded this basic legal principle when it granted Appellees' application for fees. Appellees' application unambiguously sought full compensation for their performance. This is amply demonstrated by Appellees' application, which states that "[f]or the period covered by this Application, the total fees and expenses of Co-Receiver Phil Hardberger were $76,693.06 and the total fees and expenses of Dykema Cox Smith were $257,093.44." CR 252. These amounts match the total time spent on this matter, as demonstrated by the detailed billing records attached to the application. *See* CR 285-87, 324, 328, 332.

The probate court's orders granted the entire amount requested by Appellees. CR 471. Moreover, it did so without requiring a full accounting or discharging the receiver from his duties. To the contrary, the probate court's order awarding the fees conclusively establishes that the Receiver is not yet discharged: explicitly ordering that Receiver's appointment "shall continue until further order of this Court." CR 472. Indeed, Receiver continues to do work.

As such, the probate court erred when it granted Appellees' full fees without requiring a full accounting and discharging Receiver from his duties.

**PRAYER**

Appellant Thomas Milton Benson, Jr. respectfully requests that this Court reverse the probate court's order and (1) render a judgment denying Appellees any fees for activities charged to the Shirley L. Benson Testamentary Trust prior to February 20, 2015, (2) render a judgment denying Appellees any fees related to the plea in intervention, (3) render a judgment declaring Receiver's asserted rate of $600 per hour is unreasonable as a matter of law, vacating the award of receiver's fees, and remanding the Receiver's fees to the probate court for further proceedings on reasonability, and (4) reversing the full award of receiver's fees and remanding the case for further proceedings to either (a) determine appropriate partial compensation or (b) conduct a final accounting and discharge Receiver as temporary co-receiver of the Shirley L. Benson Testamentary Trust.

Respectfully submitted,

B<small>ECK</small> R<small>EDDEN</small> LLP

By: /s/ *David J. Beck*

David J. Beck
State Bar No. 00000070
dbeck@beckredden.com
Russell S. Post
State Bar No. 00797258
rpost@beckredden.com
Troy Ford
State Bar No. 24032181
tford@beckredden.com
Owen J. McGovern
State Bar No. 24092804
omcgovern@beckredden.com
1221 McKinney, Suite 4500
Houston, TX  77010
(713) 951-3700
(713) 951-3720 (Fax)

***Attorneys for Appellant,***
***Thomas Milton Benson, Jr., as Trustee***
***of the Shirley L. Benson Testamentary***
***Trust***

30

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2015, a true and correct copy of the above and foregoing Brief of Appellant was forwarded to all counsel of record by the Electronic Filing Service Provider as follows:

Bennett L. Stahl
CURL STAHL GEIS
700 N. St. Mary's St., Suite 1800
San Antonio, TX 78205
blstahl@csg-law.com

Harriet O'Neill
LAW OFFICE OF HARRIET O'NEILL, P.C.
919 Congress Ave., Suite 1400
Austin, TX 78701
honeill@harrietoneilllaw.com

Emily Harrison Liljenwall
SCHOENBAUM, CURPHY & SCANLAN, P.C.
112 E. Pecan, Suite 3000
San Antonio, TX 78205
eliljenwall@scs-law.com

Douglas Alexander
ALEXANDER, DUBOSE, JEFFERSON &
TOWNSEND LLP
515 Congress Ave., Suite 2350
Austin, TX 78701
dalexander@adjtlaw.com

***Attorneys for Appellee Renee Benson***

Ellen B. Mitchell
DYKEMA COX SMITH
112 E. Pecan St., Suite 1800
San Antonio, TX 78205
emitchell@dykema.com

Steven R. Brook
Langley & Banack, Inc.
745 E. Mulberry, Ste. 900
San Antonio, TX 78212
sbrook@langleybanack.com

***Attorneys for Co-Receiver
Phil Hardberger***

***Attorneys for Co-Receiver
Arthur H. Bayern***

*/s/ David J. Beck*
David J. Beck

# CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Tex. R. App. P. 9.4 because it contains 6,844 words, excluding the parts of the brief exempted by Tex. R. App. P. 9.4(i)(2)(B).

2.      This brief complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14 point Times New Roman font.

Dated: <u>November 20, 2015</u>.


<u>*/s/ David J. Beck*</u>
David J. Beck
**Attorney for Appellant**
**Thomas Milton Benson, Jr., as Trustee**
**of the Shirley L. Benson Testamentary**
**Trust**

**No. 04-15-00507-CV**

IN THE COURT OF APPEALS
FOR THE FOURTH DISTRICT OF TEXAS
AT SAN ANTONIO

THOMAS MILTON BENSON
AS TRUSTEE OF THE
SHIRLEY L. BENSON TESTAMENTARY TRUST,
*Appellant*,

**v.**

PHIL HARDBERGER AND DYKEMA COX SMITH,
*Appellees*.

Appeal from Probate Court No. 2, Dallas County, Texas,
Trial Court Cause 155,572 & 155,572-A

APPENDIX TO BRIEF OF APPELLANT

**Tab**

A    Order Granting First Application for Payment of Fees of Co-Receiver Phil Hardberger and Dykema Cox Smith (CR 471)

B    Order Authorizing Payment of Appointee Fee (CR 472 – 73)

C    Second Amended Order Granting Injunction, Suspending Trustee & Appointing Limited Temporary Co-Receivers with Restrictions[1]

D    Letter from Judge Rickhoff to Co-Receivers dated March 8, 2015[2]

---

[1] The copy of this order included in the record does not contain all pages of the order. Appellant is requesting a supplemental clerk's record containing a complete copy of this order.

[2] Appellant is requesting a supplemental clerk's record containing this letter.

E    Excerpts from Application for Payment of Temporary Co-Receiver's Fees and Expenses filed by Arthur H. Bayern[3]

F    Letter from Judge Rickhoff to Co-Receivers dated June 26, 2015[4]

---

[3] Appellant is requesting a supplemental clerk's record containing this application.

[4] Appellant is requesting a supplemental clerk's record containing this letter.

# TAB A

Order Granting First Application for Payment of Fees
of Co-Receiver Phil Hardberger and Dykema Cox Smith (CR 471)

Cause No. 155,572

| | | |
|---|---|---|
| ESTATE OF | § | IN THE PROBATE COURT |
| | § | |
| SHIRLEY L. BENSON, | § | NUMBER TWO |
| | § | |
| Deceased | § | BEXAR COUNTY, TEXAS |

Cause No. 155,572-A

| | | |
|---|---|---|
| RENEE BENSON | § | IN THE PROBATE COURT |
| | § | |
| v. | § | |
| | § | NUMBER TWO |
| THOMAS MILTON BENSON, JR., as | § | |
| TRUSTEE of the SHIRLEY L. | § | |
| BENSON TESTAMENTARY TRUST | § | BEXAR COUNTY, TEXAS |

## ORDER GRANTING FIRST APPLICATION FOR PAYMENT OF FEES OF CO-RECEIVER PHIL HARDBERGER AND DYKEMA COX SMITH

On this day, the Court considered the First Application for Payment of Fees of Co-Receiver Phil Hardberger and Dykema Cox Smith. The Court finds that the Application should be GRANTED.

It is therefore ORDERED that Co-Receiver Phil Hardberger shall be paid $76,693.06 and Dykema Cox Smith shall be paid $257,093.44 as compensation for their fees and expenses incurred during the period from February 3, 2015 through June 18, 2015. Such fees and expenses shall be charged against the funds on hand of the receivership estate.

Signed this ____ day of _____, 2015.

_____
JUDGE TOM RICKHOFF

FILED

JUL 0 9 2015

GERARD RICKHOFF
CLERK PROBATE COURT NO. 2
BEXAR COUNTY, TEXAS
BY: _____
DEPUTY

V02160P2003
471

# TAB B

Order Authorizing Payment of Appointee Fee (CR 472 – 73)

CAUSE NO. 155,572-A

| | | |
|---|---|---|
| RENEE BENSON | § | IN THE PROBATE COURT |
| | § | |
| v. | § | NUMBER TWO |
| | § | |
| THOMAS MILTON BENSON, JR., AS | § | |
| TRUSTEE OF THE SHIRLEY L. | § | |
| BENSON TESTAMENTARY TRUST | § | BEXAR COUNTY, TEXAS |
| | | |
| THE ESTATE OF | § | IN THE PROBATE COURT |
| SHIRLEY L. BENSON, DECEASED | § | |
| | § | NUMBER TWO |
| | § | |
| CAUSE NO. 155,572 | § | BEXAR COUNTY, TEXAS |

---

## ORDER AUTHORIZING PAYMENT OF APPOINTEE FEE

ON THIS DAY, the Court considered the application of Phil Hardberger herein referred to as "Applicant."

Applicant is an Attorney.

Judge THOMAS E. RICKHOFF appointed Applicant on February 9, 2015.

Applicant was appointed as a Co-Receiver.

Applicant's address is 112 E. Pecan, Suite 1800, San Antonio, Texas, 78205.

Applicant's Texas Bar Number is 08949000.

Applicant's Appointee Code: _____ N\A _____ .

Applicant rendered services on behalf of The Testamentary Trust/Estate, who is THE SHIRLEY L. BENSON TRUST/Estate of SHIRLEY L. BENSON, Deceased, resulting in fees in the amount of $74,100.00, and expenses in the amount of $2,593.06, for a total award of $76,693.06, which the Court hereby finds is reasonable and just, and should be paid.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT Phil Hardberger, as a court appointed Co-Receiver, shall be paid the total sum of

6130624.1

V02160P2004

472

$76,693.06 to be taxed as costs in the proceeding to be paid within 14 days from the date of this order by Receivers from funds of the Estate/Trust by Receiver.

And that further, such appointment shall continue until further order of this Court.

Signed this ____8____ day of June, 2015.

_____
JUDGE PRESIDING

FILED

JUL 0 9 2015

GERARD RICKHOFF
CLERK PROBATE COURT NO. 2
BEXAR COUNTY, TEXAS

BY: _____
DEPUTY

# TAB C

Second Amended Order Granting Injunction, Suspending Trustee & Appointing Limited Temporary Co-Receivers with Restrictions

CAUSE NO. 155,572

| | | |
|---|---|---|
| ESTATE OF | § | IN THE PROBATE COURT |
| | § | |
| SHIRLEY L. BENSON, | § | NUMBER TWO |
| | § | |
| DECEASED | § | BEXAR COUNTY, TEXAS |

CAUSE NO. 155,572-A

| | | |
|---|---|---|
| RENEE BENSON | § | IN THE PROBATE COURT |
| | § | |
| v. | § | |
| | § | NUMBER TWO |
| THOMAS MILTON BENSON, JR., AS | § | |
| TRUSTEE OF THE SHIRLEY L. | § | |
| BENSON TESTAMENTARY TRUST | § | BEXAR COUNTY, TEXAS |

## SECOND AMENDED ORDER GRANTING INJUNCTION, SUSPENDING TRUSTEE & APPOINTING LIMITED TEMPORARY CO-RECEIVERS WITH RESTRICTIONS

The Court has considered the request of Renee Benson, Petitioner, for an injunction for the suspension of the trustee and for the appointment of a temporary receiver and receivers to serve as set out in her Original Petition for Removal of Trustee and Application for Temporary Injunctive Relief. The court responds with a limited temporary appointment of co-receivers with restrictions (hereinafter co-receivers) for the Shirley L. Benson Testamentary Trust (the "Trust") and the Estate of Shirley L. Benson (the "Estate"). Such appointment is immediately necessary for purposes of managing and conserving the Trust's and the Estate's property during litigation, the collateral litigation in Louisiana or until the parties resolve their dispute and a family trustee qualifies, and the need for court action no longer exists.

The appointment of co-receivers for the Trust's and the Estate's property is warranted on equitable grounds and under Texas Property Code § 114.008(a)(5) and Texas Civil Practice and Remedies Code § 64.001(a). The court realizes and acknowledges that the trustee has served

V02451P1240

competently for decades and deserves to know why the court acted. The court's reasons are found in the addendum attached hereto.

The powers and duties of the temporary co-receivers are set forth in this Order. To the extent that Petitioner seeks to require the temporary co-receivers to fulfill all duties and responsibilities that trustees owe to beneficiaries arising under statutory law, common law, or trust instruments, including any fiduciary duties, such relief is DENIED.

It clearly appears from the evidence that unless Respondent, THOMAS MILTON BENSON, JR., IN HIS CAPACITY AS TRUSTEE OF THE SHIRLEY L. BENSON TESTAMENTARY TRUST is temporarily enjoined from the acts described below, then Respondent or persons acting in concert with Respondent will commit such acts, and Petitioner will have no adequate remedy at law, and Petitioner will be irreparably harmed. The courts reasons are found in the attached addendum, which is hereby incorporated as part of this order. It is therefore ORDERED ADJUDGED AND DECREED that Respondent, THOMAS MILTON BENSON JR., IN HIS CAPACITY AS TRUSTEE OF THE SHIRLEY L. BENSON TESTAMENTARY TRUST and his agents servants, employees and attorneys, and all persons acting in concert with him or them who receive actual notice of this Order by personal service or otherwise, be and are hereby commanded to desist and refrain from:

a. Removing withdrawing, transferring assigning or selling to any other person or entity an of the assets of the Shirley L. Benson Testamentary Trust (the "Testamentary Trust") or the proceeds thereof;

b. Taking any action that causes or has the effect of causing the dissipation of assets or diminuition of value of the assets of the Testamentary trust, or of any remainder beneficiary's interest in the Testamentary Trust;

c.  Removing, transferring or withdrawing assets of the Testamentary trust from any bank account, whether such bank account is currently titled in the name of the Testamentary Trust or otherwise

d.  Removing, destroying, altering or in any way compromising books and records reflecting or relating to assets and liabilities of the Testamentary Trust

e.  Removing or purporting to remove Rene Benson, R. Tom Roddy, Ryan LeBlanc or Rita Le Blanc from any position as an officer or director of any banking institution in which the testamentary trust owns an interest

f.  Refusing to respond to a reasonable request by a beneficiary of the Testamentary Trust for disclosure of material known to the Trustee that might affect the beneficiary's rights concerning the trust and

g.  Utilizing any funds or assets of the Testamentary trust to pay the Trustee's costs of defense in this action absent advance approval from this Court

IT IS THEREFORE ORDERED THAT:

1.      This Court assumes exclusive jurisdiction over all assets, monies, securities, and property (whether real or personal, tangible or intangible) of whatever kind and character, wherever located, which directly or indirectly belong to the Trust or the Estate in whole or in part ("Receivership Assets") and the court assumes the power to determine what assets are properly that of the "Estate" and which are properly that of the "Trust". The Court also assumes exclusive jurisdiction over all books, records, and other informational and electronic documents that belong to the Trust or the Estate or relate in any way to the Receivership Assets ("Receivership Records") and the court assumes the power to determine what documents relate to the "Estate and which relate to the "Trust".

2. Phil Hardberger and Arthur Bayern, residents of San Antonio, Bexar County, Texas, and citizens and qualified voters of Texas, are hereby appointed Co-Receivers of the Receivership Assets and Receivership Records (collectively, the "Receivership Estate"). Each shall file a bond in the amount of $500,000.00, conditioned as provided by law and approved by this Court. The costs of such bonds shall be paid from the Receivership Estate. However, considering the growing volume of the collateral litigation, all significant decisions will be presented for court approval so they will share in the court's judicial immunity. The co-receivers are encouraged not to duplicate work in separate law firms but reach an agreement on division of duties. This Order is further conditioned on Petitioner Renee Benson posting a bond in the amount of $500,000.00.

3. On filing their bonds, together with the oath prescribed by law, the Receivers are authorized, subject to the control of this Court, to do any and all acts necessary to the proper and lawful conduct of the Receivership, and to immediately take and have complete and exclusive control, possession, and custody of the Receivership Estate and to any assets traceable to the Receivership Estate.

4. The Receivers are ordered to well and faithfully perform the duties of their office; to timely account for all monies, securities, and other properties which may come into their hands as Receivers; to be compensated for their services on an hourly-fee basis; to hire professionals, as the Receivers deem necessary or advisable, to provide services to the Receivers or the Receivership Estate; to file periodic applications for this Court to approve the payment of their fees and those of any professionals they may hire; and to abide by and perform all duties set forth in this Order and as required by law.

V02151P1243

5.    As of the date of the entry of this Order, the Receivers are, subject to the control of this Court, also specifically directed and authorized to perform the following acts and duties:

(a)    Identify and take possession of the Receivership Estate after determining the extent of co-ownership with assets held by others or other entities not before the court, insure it against hazards and risks, and attend to its maintenance.

(b)    Manage and direct the business and financial affairs of the Receivership Estate and any entity owned or controlled by the Receivership Estate (consistent with the proportion of ownership or control held by the Receivership Estate);

(c)    With the Court's consent, retain or remove, as the Receivers deem necessary or advisable, any officer, director, independent contractor, employee or agent of the Receivership Estate.

(d)    Collect, marshal, and take custody, control, and possession of all assets traceable to the Receivership Estate in whole or in part, wherever situated, including the income and profit therefrom and all sums of money now or hereafter due or owing to the Receivership Estate.

(e)    Collect, receive, and take possession of all goods, chattel, rights, credits, monies, effects, lands, leases, books and records, work papers, records of account, including computer maintained information, contracts, financial records, monies on hand in banks and other financial initiations, and other papers of individuals, partnerships, or corporations whose interests are

now directly or indirectly held by or under the direction, possession, custody, or control of the Receivership Estate.

(f)     With the consent of the Court, institute such actions or proceedings to impose a constructive trust, determine the assets of the "Estate" or "Trust" and then to obtain possession of property or assets, avoid transfers or obligations, seek damages, and/or recover judgment with respect to any assets or records that are traceable to the Receivership Estate in whole or in part or any persons who may have caused an injury to the Receivership Estate.

(g)     Obtain, by presentation of this Order, documents, books, records, accounts, deposits, testimony, or other information within the custody or control of any person or entity sufficient to identify accounts, properties, liabilities, and causes of action of the Receivership Estate.

(h)     Make such ordinary and necessary transfers, payments, distributions, and disbursements as the Receivers deem advisable or proper for the maintenance or preservation of the Receivership Estate.

(i)     Perform all acts necessary to conserve, hold, manage, and preserve the value of the Receivership Estate, in order to prevent any irreparable loss, damage, and injury to the Estate.

(j)     Obtain any insurance, including but not limited to errors and omissions insurance, related to the performance of the Receivers' duties under this Order, with the costs of such insurance to be paid from the Receivership Estate.

(k)     Enter into such agreements in connection with the administration of the Receivership Estate, including, but not limited to, the employment of such managers, agents, custodians, consultants, investigators, attorneys, and accountants as the Receivers judge necessary to perform the duties set forth in this Order and to compensate them from the Receivership Estate. The Receivers are specifically authorized to hire Cox Smith Matthews Incorporated and Langley & Banack, Inc.

(l)     With the Court's consent, collect and compromise demands, institute, prosecute, compromise, adjust, intervene in, or become party to such actions or proceedings in state or federal courts that the Receivers deem necessary and advisable to preserve the value of the Receivership Estate, or that the Receivers deem necessary and advisable to carry out the Receivers' mandate under this Order and any subsequent order and likewise to defend, compromise, or adjust or otherwise dispose of any or all actions or proceedings instituted against the Receivership Estate that the Receivers deem necessary and advisable to carry out the Receivers' mandate under this Order and any subsequent order.

6.     It is further ordered that the Receivers must, within 30, days of their qualification, file in this action an inventory of all property of which the Receivers have taken possession. If the Receivers subsequently identify or come into possession of additional property, then they shall file a supplemental inventory as soon as practical.

7.     The powers and duties of the temporary co-receivers are prescribed by this Order. Their duties and obligations run to this Court. They are not appointed to serve as trustees of the

V02151P1246

Trust and do not, by accepting this appointment, assume fiduciary or other duties that a trustee would owe to beneficiaries. However, the Receivers are encouraged by the Court to be transparent with the parties and collateral parties on all substantive anticipated actions and *they* may, in the exercise of their discretion and judgment, respond to requests or other inquiries made by the parties to this proceeding or beneficiaries of the Trust.

8. It is further ordered that all persons who receive notice of this Order are enjoined from taking any actions to transfer, withdraw, conceal or encumber any property of the Receivership Estate, and shall not take any action to interfere with the Receivers' exclusive possession of the property of the Receivership Estate. Any such interference may be punished by contempt.

9. It is further ordered that the injunction requested by Renee Benson is **GRANTED** and that Thomas Milton Benson, Jr. be and is hereby suspended from serving as Trustee of the Trust and the Co-Receivers are appointed.

10. IT IS FURTHER ORDERED that the final trial on this matter is hereby set for the 1st day of September, 2015 commencing at 9:30 a.m. in the courtroom of Probate Court No. 2, Bexar County, Texas.

IT IS FURTHER ORDERED that the clerk of this Court shall forthwith, on the filing by Petitioner of the bond herein required and on the approval of same, according to law, issue a Writ of Temporary Injunction in conformity with the law and terms of this Order. it is further OREDERED that this temporary injunction shall not be effective unless Petitioner executes and files with the Court, a bond in conformity with the law, in the total amount of $500 which may be filed in cash, at Petitioner's option. The cash deposited in lieu of a TRO bond previously

V02151P1247

posted by Petitioner is hereby ORDRERED released, so as to be immediately applied by the clerk towards the Temporary Injunction bond herein set.

SIGNED and ENTERED on this the __2__ day of March, 2015.

_____
The Honorable Tom Rickhoff

FILED

MAR 02 2015

GERARD RICKHOFF
CLERK PROBATE COURT NO. 2
BEXAR COUNTY, TEX
BY: _____
DEPUTY

Addendum to Order

## PRELIMINARIES

All preliminary matters were resolved by agreement prior to the hearing primarily through the courts pre-hearing "Inquiry of the court" and the responses thereto by the parties. (Appellate exhibits 1, 2 & 3) The parties agreed the court had jurisdiction and venue and that all notices and services were complete and no party, attorney or the court, had a conflict. The attorneys representing the trustee were admitted properly by Pro Hac Vice and no recusal or continuances were requested. Counsel for the trustee objected to media recording. That request was granted as the Texas Supreme Court rule of one by notice to the clerk was not satisfied.

All counsel were advised of the court's intention to appoint receivers at the conclusion of the hearing. That notice is required when a receiver is to be appointed over real estate. The hearing was then continued until Monday, February 9, 2015 at 4:00 p.m. which was selected for the convenience of the attorneys for the trustee and the court.

## ACTION AND STATEMENTS OF THE TRUSTEE ADVERSELY AFFECTING THE TRUST

The court considered whether, within the four corners of the initial pleadings, and the resulting testimony, the court's ultimate decision, was compelled and no other. That is to temporarily suspend the trustee and temporarily appoint limited-power co-receivers. Significant actions by the trustee and his few known statements motivating those acts negatively impacted the trust and were of particular concern though all the acts of the trustee are considered.

The statement, "is my money safe?" made to the banker led to the disconcertingly sudden withdrawal of the trust funds and the trustees own funds. (The Trustee appeared to express unnecessary fear considering the harm to the trust that was likely to result). This was 12% of the banks capitalization and the bank is 97% owned by the trust. The trustee himself had appointed all the members of the bank's long-term executives and board. There appeared no reason why the funds would be safer at Frost and there was no evidence that these trust funds are still at Frost Bank. Both sides presented evidence that this action impaired the banks functions and could

1

V0215OP7620

V02151P1249  13

cause other depositors concern. The court was left to wonder whether this was a rational fear and where the funds would go next.

"Take the trust and related records, secretly depart, and don't tell the beneficiaries where you are." This is a paraphrase of the trustee's words as delivered by the trustee's bookkeeper. Other than insuring that the beneficiaries could not be informed about the trust in the future, again a sudden departure from the historic trust relationship, this act had no purpose and no positive for the trust. It breached the relationship of trust that existed over the life of this only parent trustee and only child beneficiary.

"You are the only person I trust in San Antonio." The dealership General Manager quoted the trustee. The evidence was that the trustee had trusted relationships with an extensive array of key managers for many decades. Indeed long-term loyalty was a hallmark of his business. This statement, provided by the respondent's witness, unexplained by the trustee, along with the foregoing statements, carries a tone of sudden excessive fear. The court cannot deduce from the record how this feeling follows from the actions of the beneficiary but no acts of the daughter would seem to justify this conclusion that all long-term executive associates in San Antonio are disloyal or involved in a conspiracy.

"I want no contact with any of you... Sincerely yours" referring specifically to the beneficiaries. Though drafted by a lawyer friend, only the attorney for the trustee was left to explain its meaning. His conclusion is an opinion and the statements of his legal team are not evidence. The trustee, though available, did not appear. The bookkeeper testified she saw him in San Antonio earlier. This no contact statement is most contrary to the evident intention of the settlers of the trust at the time it was established. Again, the evidence of the daughter's behavior that would generate this anger was meager. The questions on cross-examination inferred that her lack of business acumen disappointed the trustee. However, the trustee is also father. He was known to revere family, church and friends, and particularly love his only surviving child. It appears extreme to disclaim all his parental care, a serious life-altering change at his age, when families celebrate parents and grandparents. Wretched relationships cannot be good for this trustee who suffered the tragic early loss of two children and two wives. Without apparent cause, the trustee stopped the $10,000 payments to the beneficiary after decades. The only explanation offered was he determined she could not function up to his standards as a businesswoman.

2

V02150P7621

V02151P1250

Apparently he has also fired the beneficiary, her son and daughter and collapsed her business, Renson, which administered the key car dealerships which are trust property. If he was disappointed in her business sophistication and he unemployed her, it seems he would continue payments.

HEALTH

The trustee is 87 ½ years old with a quadruple bypass, numerous recent hospitalizations and surgeries, macular degeneration, a concussion and other health problems not well established by the evidence. However, all the direct evidence and all the witnesses agreed; there are substantial health issues and this trustee does not seem to be improving. "He is not the same"/ "He is the same", all lay opinions, most by witnesses lacking direct contact. There were vague references to an internist, Dr. Goldman and a Dr. Harris. It would be hard to find a reported case with more health issues and less professional analysis. While the court considers only the evidence from this case, the court is not obligated to ignore four decades of experience, largely in specialty courts that deal with the vulnerable. Nor should the courts take nothing away from mandated continuing legal education which most recently featured Lady Astor Regrets and the Glasser case, cited in this courts "Inquiry." This court has significant experience with the scenario presented including thousands of open guardianships and has never established or rejected a permanent guardianship without the testimony of a medical doctor. Without one, the court finds it impossible to draw accurate conclusions about the trustee's health but the court need not. The trustee himself confesses that "at my age" the pressures are too much.

This court was without the benefit of witnesses who are at arms-length with the trustee, like; spouse, doctor, nurse, nutritionist, surgeon, dismissed caregivers, housekeeper, cook, someone. The trustee appeared only briefly in the media clips. While the court always maintained the finding on capacity would remain in New Orleans, the forum that is proper and the litigant's choice, this court cannot disregard the issue of the trustee's fitness to serve.

THE WITNESS

It is unusual that all the witnesses were forthright, deliberate, professional and credible. More remarkable, they did not conflict on essential facts, i.e. the no contact note, movement of trust records and money. This is a tribute to the trustee's judgment of character and the settlers

3

V02151P1251 15    V02150P1622

parenting skills. But, the remainder of their testimony was opinion and speculation following questions like "Why do you think the trustee....?" "Would it surprise you that....?"

## THE CONTENTS

It appears the movant by the evidence and pleadings alleges incapacity, undue influence and elder abuse (isolating the trustee from his family). This court finds it unnecessary to reach these issues and cannot with this evidence. It is sufficient to consider only the trustee's actions and statements and whether they damaged the trust, not why he acted, perplexing as that is.

It appears the respondent trustee's defense is that his actions do not constitute a trust breach. The court disagrees. The court allowed the respondent the past three days to reverse his decisions, such as returning all the funds, releasing the records and an opportunity to explain his statements. Now the court is forced to appoint receivers with the expertise and stature to reverse, where appropriate, these decisions and limit, if possible, the damage to this trust. The court charges the receiver with these responsibilities and urges them to surrender other law firm work in order to intensify the first month efforts. This will be expensive, but necessary. The actions of the trustee will likely damage the trustee's local brand significantly over this next year if not reversed soon and if the major interested parties are not reassured that the previous status quo obtain accompanied by stability and calmness. (One executive resigned duties while on the stand). Time is of the essence. Early efforts will generate less ultimate costs and make for a shorter receivership. Receivers are advised to get court approval for all significant decisions to insure their efforts are transparent to the parties and court, so that the court's judicial immunity will enure to them.

Because the trustee served decades with generosity and distinction, the court is most hesitant to intervene and suspend him. The court is also loath to participate in an endless, costly Dickensian kerfuffle and will be vigilant to extricate the receivers. However, it is obvious that the trustee is facing the pressures of; the overreaching expectations of sports fans, the media's scrutiny, an interdiction contest with the beneficiary, a potential dispute over related trusts with huge assets as well as a likely pre-death will contest. All litigation where the trustee and his only child are the principal adversaries. Even this revered trustee is mortal and no court should be

4

V0215IP1252 16

V02150P7623

complicit in allowing him more then he can bear if a reasonable and safe alternative is found to "assist" him.

5

V02150P7624

V02151P:253   17

# TAB D

Letter from Judge Rickhoff to Co-Receivers dated March 8, 2015



**BEXAR COUNTY PROBATE COURT # 2**
**Tom Rickhoff, Judge**
Bexar County Courthouse
100 Dolorosa STE 117
San Antonio, Texas 78205-3002
210-335-2190
210-335-2029 Fax

March 9, 2015

Phil Hardberger
Cox Smith Matthews Incorporated
112 E. Pecan ST. #1800
San Antonio, Texas 78205

Arthur H. Bayern
Langley & Banack, Inc.
745 E. Mulberry #900
San Antonio, Texas 78212

RE: Tom Benson (2011) vs. Tom Benson (2014)

Art and Phil,

I've read your "plea" and conclude we should do nothing. Your actions have reduced the litigation complexity, it is so low now, that the costs of your new efforts no longer can equal reasonable benefits. The case has reached the dreaded Dickensian Kerfuffle door where litigation endlessly seeks side corridors (e.g. the 1% construct you now reveal). However, there will be no limit to the small unimportant defects. Reading exhibit 13, the Benson trust diagram, it appears, to me, to be a Gordian knot of irrevocable trusts (I.T.) that contain the great bulk of what Benson built. It should not be your Syspusian task, to push it further to final perfection. The beneficiary must await the trustee's action on the asset switch. That looming lawsuit is not on your sidewalk.

What is this litigation? It is Tom Benson (2011) versus Tom Benson (2014). He is at war with himself. No one is trying to "take' anything. He, Tom Benson (2011) already dedicated the bulk of his wealth. Everything is in the I.T. he, Tom Benson (2011), created. Now, Tom Benson (2014) changed his mind. Who cares why. But, he cannot. Big businessmen are still just like all of us and cannot just sign whatever they want and think if it goes south "I'll just litigate." I've now read the I.T. It does not take us lawyers to comprehend. It is a complex tax motivated I.T. that, if broken, makes the IRS ones equity partner in death. You don't need to protect it any more than you need to keep his heirs from "attacking" him. The I.T. may place the sports team's ownership beyond a change of mind. That's why Tom Benson is not directly challenging his own

creation. How can he? Duress, undue influence, the IRS, made me do it.... Assuming the I.T. is an immovable force, it is not under attack from the beneficiaries but from ... Tom Benson (2014) who, himself, may even be an indomitable force. Still it is an impasse. You don't need to do anything, nothing can come from nothing, you should just wait.

File your 30 day report without requesting expensive assessments, valuations... Those don't add value. Be alert for attempts to raid the Shirley Benson Trust further and stand your ground, but otherwise do nothing. You've had the money and records returned, you've reassured the employees they'll see next Christmas and the New Year. Mission Accomplished.

You also don't need to litigate and stop the asset swap. It likely cannot happen. The sports team's value is increasing too fast and is too high compared to the remaining wealth. As you point out, you cannot take the very assets in the I.T., layer over some promissory notes, and call it an equal asset switch. The trustee doesn't need receivers to stop him. The beneficiaries sue and you just monitor.

If the parties wish, I'll replace receivers with an agreed trustee or if the Benson lawyers will reveal what they'll do during Benson's life, about the I.T., then perhaps progress. Until then, just go dormant. Await the New Orleans' result (which may not resolve your problem) and monitor the Tom Benson (2011) versus Tom Benson (2014) suit. I doubt they'll mediate. When Tom Benson passes, the I.T. dictates the team owners to be the beneficiaries. Until then, millions in wasteful attorney fees can be consumed yet obtaining the same result. However, that will not be caused by the receivers. Submit your current bill and 30 day report, then stop. Send me a copy of your filings directly. It takes 4 days to get these documents from the probate clerk's office via e-filing.

Phil, I just received your trip dates. Schedule as you wish. I don't plan to set anything.

Enjoy your practice,

Tom Rickhoff
*Judge, Probate Court 2*

cc: David Beck (Via E-mail: dbeck@beckredden.com)
    Troy Ford (Via E-mail: tford@beckredden.com)
    Bennett Stahl (Via E-Mail: blstahl@csg-law.com)
    Emily Harrison Liljenwall (Via E-Mail: eliljenwall@scs-law.com)
    Robert A. Rosenthal (Via E-Mail: brosenthal@rpsalaw.com)
    Phillip Wittmann (Via E-Mail: pwittmann@stonepigman.com)

# TAB E

Excerpts from Application for Payment of Temporary
Co-Receiver's Fees and Expenses
filed by Arthur H. Bayern

E-FILED
IN MATTERS PROBATE
Accepted: 8/31/2015 10:36:26 AM
GERARD RICKHOFF
CLERK PROBATE COURTS
BEXAR COUNTY, TEXAS
BY:_____
Margarita Garza

CAUSE NO. 155,572

| | | |
|---|---|---|
| ESTATE OF | § | IN THE PROBATE COURT |
| | § | |
| SHIRLEY L. BENSON, | § | NUMBER TWO |
| | § | |
| DECEASED | § | BEXAR COUNTY, TEXAS |

CAUSE NO. 155,572-A

| | | |
|---|---|---|
| RENEE BENSON | § | IN THE PROBATE COURT |
| | § | |
| v. | § | NUMBER TWO |
| | § | |
| THOMAS MILTON BENSON, JR., AS | § | |
| TRUSTEE OF THE SHIRLEY L. | § | |
| BENSON TESTAMENTARY TRUST | § | BEXAR COUNTY, TEXAS |

## APPLICATION FOR PAYMENT OF TEMPORARY CO-RECEIVER'S FEES AND EXPENSES

Now comes ARTHUR H. BAYERN, and files this, his Application for Payment of Temporary Co-Receiver's Fees and Expenses, and would respectfully show the Court as follows:

1. ARTHUR H. BAYERN was appointed by this Court as Temporary Co-Receiver for the Shirley L. Benson Testamentary Trust (the "Trust") and the Estate of Shirley L. Benson (the "Estate") by Order originally dated February 9, 2015 and by subsequent amended Orders of this Court on February 18, 2015, and March 2, 2015. The Court ordered the Co-Receivers to file an Inventory which was duly filed in this cause on March 25, 2015.

2. ARTHUR H. BAYERN, as Temporary Co-Receiver, retained the services of LANGLEY & BANACK, INC. to provide him legal services pertaining to the receivership, as well as the accounting firm of PADGETT, STRATEMANN & CO. to provide him with accounting services required in the receivership.

3. ARTHUR H. BAYERN has rendered necessary and reasonable services and advancement of necessary expenses for administrative matters related to this Receivership and

Submitted on: 8/31/2015 9:54:43 AM

# LANGLEY & BANACK

INCORPORATED
ATTORNEYS AT LAW
745 EAST MULBERRY, SUITE 900
SAN ANTONIO, TEXAS 78212-3166

(210) 736-6600
TAX I.D. 74-2407279

The Honorable Tom Rickhoff,

AUGUST 28, 2015
FILE NUMBER: 17978.0002
INVOICE NO. 231139
PAGE 3

| DATE | DESCRIPTION | ATTY | HOURS | AMOUNT |
|------|-------------|------|-------|--------|
| 06/25/15 | Send email to Leo Munoz, CPA, inquiring about the Form 1041 for the trust/estate for the year 2014 (.2); Leo responds after his meeting with his tax person with a list of the items we will need in order to file the return which is due on September 15, 2015   (.2); send copy to David Kinder at Dykema Cox Smith so he can consult with Phil Hardberger on our efforts to get tax information (.2). | AHB | .60 | 360.00 |
| 06/26/15 | Receive and review the draft of a letter to the Receivers from Judge Rickhoff (.3); conference with Judge Rickhoff on the letter and the applications for fees and expenses (.3); exchange emails with Mark Barrera and David Kinder and send copy to Steve Brook (.3); finalize the two applications and place originals of Affidavits with each one  (.2); travel to the courthouse  (.3); file the two fee applications and get file-stamped copies of the first pages (.2); conference in chambers with Judge Rickhoff and Mark Barrera  (.3);  return to office (.3); send out file-stamped copies of the two fee applications to all parties in the receivership (.3). | AHB | 2.50 | 1,500.00 |
| 06/30/15 | Receive and review suggested Second Motions on the possible payment to Rahbeck Construction and the interest payments on the promissory note to Benson entities in New Orleans (.5); conference with Steve | AHB | 1.10 | 660.00 |

**Exhibit "A"**

# LANGLEY & BANACK

INCORPORATED
ATTORNEYS AT LAW
745 EAST MULBERRY, SUITE 900
SAN ANTONIO, TEXAS 78212-3166

(210) 736-6600
TAX I.D. 74-2407279

The Honorable Tom Rickhoff,

AUGUST 28, 2015
FILE NUMBER: 17978.0002
INVOICE NO. 231139
PAGE 4

| DATE | DESCRIPTION | ATTY | HOURS | AMOUNT |
|------|-------------|------|-------|--------|
| | Brook on these items (.3); respond to Diane Roth at Dykema with copies to Messrs. Brook, Kinder, Barrera, and Hardberger with questions on the Second Motions and inquiry about tax information needed for the trust income tax return for the year 2014 (.3). | | | |
| 07/01/15 | Receive and review message forwarded from Ms. Liljenwall, one of the attorneys for Renee Benson, on the insurance for the Tahoe residence as well as the ad valorem taxes (.3); visit with Steve Brook about these and other issues in the various Motions that either have been filed or need to be filed (.3); send email to Leo Munoz, CPA, on Tahoe expenses (.2); receive response from Leo that the insurance premiums have been paid but that we have not received an invoice for the taxes (.2); forward the response to Steve Brook and ask him to respond to Ms. Liljenwall that she will need to file some Motions, rather than the receivers (.3). | AHB | 1.30 | 780.00 |
| 07/07/15 | Receive and review the Objections to Payment of Receivers' Certain Fees and Expenses with exhibits filed by Mr. Beck on behalf of Tom Benson (.3); telephone conference with Judge Rickhoff (.2); conference with Steve Brook on the Objections (.2); telephone conference with Liz McDevitt at Probate Court #2 on the Motion to Pay Accountants (.2); telephone conferences with David Kinder and Mark | AHB | 1.70 | 1,020.00 |

Exhibit "A"

# LANGLEY & BANACK

INCORPORATED
ATTORNEYS AT LAW
745 EAST MULBERRY, SUITE 900
SAN ANTONIO, TEXAS 78212-3166

(210) 736-6600
TAX I.D. 74-2407279

The Honorable Tom Rickhoff,

AUGUST 28, 2015
FILE NUMBER: 17978.0002
INVOICE NO. 231139
PAGE 5

| DATE | DESCRIPTION | ATTY | HOURS | AMOUNT |
|------|-------------|------|-------|--------|
| | Barrera on the Objections and the fees and expenses involved and the timing around the entry of the Order Appointing the Co-Receivers (.3); review the expenses and fees complained of in the Motions requesting payment on behalf of the Co-Receivers and their attorneys (.5). | | | |
| 07/07/15 | Telephone conference with Tom Roddy, Chairman of the Board of the Bank (.2); telephone conference with Phil Hardberger on pending issues in the receivership (.3). | AHB | .50 | 300.00 |
| 07/07/15 | Conference with Steve Brook on the telephone call from Phil Hardberger and the Objections to our fee applications (.3); send email to David Kinder about the fees and fee applications (.2); receive response from Mr. Kinder (.2). | AHB | .70 | 420.00 |
| 07/08/15 | Receive telephone message from Judge Rickhoff about pending applications to pay bills (.2); telephone conference with Judge Rickhoff and Liz McDevitt, Probate Auditor on pending applications, including bills from Padgett & Stratemann, CPAs, Rahbeck Construction (Tahoe residence), Phil Hardberger, Dykema Cox Smith, Arthur Bayern, Langley & Banack, and interest payments to Benson Football LLC and discussed where we go from here and the need to inform all counsel when the bills are paid (1.0); review files for the various applications and send email to Leo Munoz, | AHB | 2.80 | 1,680.00 |

**Exhibit "A"**

# TAB F

Letter from Judge Rickhoff to Co-Receivers dated June 26, 2015



**BEXAR COUNTY PROBATE COURT # 2**
**Tom Rickhoff, Judge**
Bexar County Courthouse
100 Dolorosa STE 117
San Antonio, Texas 78205-3002
210-335-2190
210-335-2029 Fax

June 26, 2015

Phil Hardberger
Cox Smith Matthews Incorporated
112 E. Pecan St. #1800
San Antonio, Texas 78205

Arthur H. Bayern
Langley & Banack, Inc.
745 E. Mulberry #900
San Antonio, Texas 78212

RE: 155572 Estate of Shirley L. Benson, Deceased

Dear Art and Phil and litigants,

Bills arrived today. They serve as a reminder that the receivership must end in favor of a more permanent solution.

My sole duty is to ensure the Shirley Benson Trust is properly administered. However, it is unlikely any substitute trustee under my direction will actually run the bank or a dealership; they will only serve to maintain the status quo in a subdued way while ensuring access to the accountant's work.

Apart from the overt actions which generated the receiver's appointment, two of Tom Benson's recent statements which I paraphrase below, require that this jurisdiction continue. These statements are:

1. the directions to the legal team, to do whatever it takes to force the chosen change and

2. the statement of intent not to work with the family, i.e. the beneficiaries.

Faced with these statements, this court cannot fashion a reasonable resolution. If this dynamic is not changed, then after the appeal, I'll be forced to relieve the receivers and appoint an interim trustee either agreeable to all or just to me and await a jury finding. At this time, suspending this litigation should be in everyone's interest. It is most certainly my desire. It is discomforting for all, to be associated with endless litigation and family disassociation in the years that should be more restful and rewarding for Tom Benson.

After a review with the court auditor today, I am authorizing payment of the debts in 10 days. If any party wishes to contest, they may request a formal hearing or merely a telephonic status conference. The parties may wish to discuss the resolutions I suggested in my June 9, 2015 note.

Sincerely,

Tom Rickhoff
*Judge, Probate Court 2*

cc: David Beck (Via E-mail: dbeck@beckredden.com)
 Troy Ford (Via E-mail: tford@beckredden.com)
 Bennett Stahl (Via E-Mail: blstahl@csg-law.com)
 Emily Harrison Liljenwall (Via E-Mail: eliljenwall@scs-law.com)
 Robert A. Rosenthal (Via E-Mail: brosenthal@rpsalaw.com)
 Phillip Wittmann (Via E-Mail: pwittmann@stonepigman.com)