**Affirmed and Majority and Concurring Opinions filed August 14, 2014.**



In The

# Fourteenth Court of Appeals

### NO. 14-13-00042-CV

### CLAY EXPLORATION, INC., Appellant

### V.

### SANTA ROSA OPERATING, LLC, Appellee

**On Appeal from the 12th District Court
Grimes County, Texas
Trial Court Cause No. 28262-A**

## MAJORITY OPINION

In this case, a receiver appointed under section 64.091 of the Civil Practice and Remedies Code executed an oil and gas lease to appellant Clay Exploration, Inc. Clay appeals the trial court's order denying its motion to confirm the receiver's lease and granting appellee Santa Rosa Operating, L.L.C.'s motion to set aside the lease. Clay's primary argument on appeal is that the trial court erred in ruling that the receiver lacked authority to execute the lease to Clay. Based on the

limited authority granted in the order appointing the receiver, we hold the trial court correctly ruled the receiver lacked authority to lease to Clay. We therefore affirm the trial court's order setting aside the lease.

## BACKGROUND

In 1999, Marathon Oil Company filed a petition for appointment of a receiver to lease mineral interests in five tracts of land. *See* Tex. Civ. Prac. & Rem. Code Ann. § 64.091(b) (West Supp. 2014). These tracts included 102 acres in Grimes County that Frederick Kastan and Gustav Heye purchased in 1889.[1] The record shows that Kastan later left Texas and moved back to Berlin, Germany.

Marathon requested a receiver "to take charge of and execute an oil, gas, and mineral lease, or leases" on behalf of the defendant owners of the mineral interests, including Fredrick Kastan or his unknown heirs.[2] Marathon alleged that it had made a "thorough and diligent but unsuccessful effort" to locate the heirs. Marathon also alleged that it owned a leasehold estate in the relevant tracts and would be unable to drill, develop, pool, unitize, produce, and operate the mineral interests if a receiver was not appointed.

The trial court appointed Charles Ketchum to serve as receiver. The trial court ordered that the receiver

> shall have the authority and is hereby authorized and directed to *deliver a mineral lease*, or leases, with pooling authority as provided

---

[1] The surname "Kastan" is also spelled "Kaston" or "Kasten" in certain court documents. Because affidavits from the alleged heirs indicate that the correct spelling is Kastan, we use that spelling here.

[2] The petition also requested that the receivership cover the mineral interests of defendants Susie Feggins Henderson, Shirley June Sunday, David W. Acreman, Ollie Acreman, Trudy Acreman Oliver, Ray Acreman, Willie James Creeks, Brenda P. Debose, Wilson E. Debose, Jr., Debbie Ann Gaston, Kevin Hargrove, Betty Jean Hill, and Dorothy Marie Marks, or, if any of those persons are deceased, their unknown heirs. Regarding the 102-acre tract at issue here, the only interested defendant was Frederick Kastan or his unknown heirs.

2

by law, covering all the Defendants' entire mineral interests, in, under and that may be produced from the respective tracts of land described on Exhibit "A," *unto Marathon Oil Company*, which can be accomplished by executing a separate oil and gas lease to Marathon Oil Company covering each of the five (5) tracts of land described on Exhibit "A" or by executing an oil and gas lease covering one or more of said tracts; the Receiver is further authorized and shall have the power to enter into any unitization agreement which has been duly authorized by the Railroad Commission of Texas and to do all acts and have all powers provided for Receivers by the Statutes of the State of Texas.

(Emphasis added). The trial court further ordered that

if the Receiver is successful in negotiating the sale, negotiation, execution and delivery of a mineral lease or leases covering Defendants' entire mineral interest, the Receiver shall *report the terms of such to this Court for confirmation or disallowance*; that any money consideration negotiated by the Receiver for the execution of leases shall be paid to the Clerk of this Court and placed in the Registry of the Court, and after applying such money consideration to any costs that may have accrued, or may hereafter accrue, in this cause, the balance and any future payments shall be retained by the Clerk of this Court in the Registry of this Court . . . .

(Emphasis added). There is no evidence in the record that Marathon ever drilled a well on the tracts.[3]

In 2011, both Clay and Santa Rosa sought to lease the mineral interests in the 102 acres. Tayland Resources, LLC obtained leases from some of the non-Kastan holders of mineral interests in the property using funds provided by Clay. Santa Rosa filed a petition with a new cause number in November 2011, asking the court to appoint a receiver to lease the minerals. Tayland Resources intervened

---

[3] At trial, Clay's lawyer represented to the court that Ketchum had executed a lease with Marathon in 1999, which expired by its own terms three to five years later because no well was drilled. Our record on appeal, however, does not contain a copy of that lease, or an order from the trial court confirming it.

and filed its own petition for appointment of a receiver; it later assigned its interests in the leases to Clay. This new receivership action, to the extent it remains live, is not at issue in this appeal.

Clay also contacted the original receiver, Ketchum, who executed an oil and gas lease in favor of Clay in January 2012. According to Clay, Ketchum also "accepted the bonus money on behalf of the Unknown Kast[a]n Heirs," and the "money was deposited with the District Clerk as directed by the existing receivership." Ketchum died later that month.

Santa Rosa filed a petition in intervention in the original Marathon receivership action in April 2012. Santa Rosa alleged that Ketchum was authorized to enter into an oil and gas lease only with Marathon. Santa Rosa also alleged that it had found the unknown Kastan heirs and obtained leases from them.[4] Santa Rosa moved to set aside the receivership and to invalidate the Ketchum–Clay oil and gas lease. Santa Rosa contended the lease was invalid because (1) Clay "could not have obtained or proved its entitlement to take the oil and gas lease from the Receiver since its counsel was informed that the Kast[a]n heirs were no longer unknown," and (2) the appointment order "provided that the Receiver was to only make an oil and gas lease with Marathon."

The next day, Clay filed a motion in the Marathon action to confirm its lease from Ketchum. Clay alleged that, although the "initial lease was to be negotiated with Marathon . . . the [appointment] order did not prohibit, and in fact provided for the receiver to enter into future leases for the benefit and protection of the Unknown Kast[a]n Heirs."

_____

[4] Santa Rosa attached to its petition a Memorandum of Lease from purported Kastan heirs, signed by Irit Kroner Cohen and Tamar Kroner Cohen. Santa Rosa also introduced leases signed by Klaus Kastan, Edith Kastan, Claudia V. Stuckard, Thomas Alexander Gutman, and Shoshana Kroner.

4

After holding an evidentiary hearing, the trial court issued an order denying Clay's motion to confirm the lease, granting Santa Rosa's motion in part, and setting aside the Ketchum–Clay lease. The order did not specify the ground on which the court set aside the lease, and it stated that the court was not resolving the issues of dissolving the receivership or distributing funds on deposit to potential heirs.[5] Clay filed a motion to sever "the issue of the confirmation of the lease," and the trial court ordered the severance of all "claims related to the validity of and/or confirmation of the Receiver's oil and gas lease to Clay Exploration," resulting in a final, appealable order. This appeal followed.

## ANALYSIS

On appeal, Clay raises three issues: (1) the trial court erroneously ruled that the receiver lacked authority to execute the lease to Clay, and therefore erred in setting aside the receiver's lease; (2) the trial court abused its discretion in refusing to confirm the receiver's lease because—having erroneously ruled that the receiver lacked authority—the trial court never reached the question whether the lease was entered into through mistake, inadvertence, or improvidence; and (3) the trial court abused its discretion in refusing to confirm the receiver's lease because there was no evidence that the receiver's lease was entered into through mistake, inadvertence, or improvidence. On the first issue, we hold that the receiver's authority to execute and deliver a lease extended only to Marathon, and therefore the trial court did not err in setting aside the receiver's lease to Clay. Because the remaining issues regarding the trial court's refusal to confirm the Ketchum–Clay lease assume that the receiver had authority, we do not reach those issues.

---

[5] The court subsequently appointed a substitute receiver subject to any previous orders issued in the cause.

5

## I.  Standard of review

Statutory construction and the legal effect of a court order are questions of law that we determine de novo based on the plain language of the statute or order. *See F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 683 (Tex. 2007); *Shanks v. Treadway*, 110 S.W.3d 444, 447–49 (Tex. 2003). When a trial court's judgment or order does not identify the grounds on which the trial court relied, we will affirm the judgment on any grounds presented that fully support the complained-of ruling. *See City of Mont Belvieu v. Enter. Prods. Operating, LP*, 222 S.W.3d 515, 518 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *Britton v. Tex. Dep't of Crim. Justice*, 95 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

## II.  The trial court did not abuse its discretion in setting the Ketchum–Clay lease aside because, although the receivership continued, the receiver was not authorized to execute or deliver a lease to Clay.

Because the trial court's written order does not identify the grounds on which it relied in denying Clay's motion to confirm and granting Santa Rosa's motion to set aside the Ketchum–Clay lease, we may affirm based on either of the two grounds Santa Rosa presented to the trial court. *See, e.g., Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989). The parties' briefs address both grounds, and either ground, if correct, would support the trial court's ruling.

Taking its cue from certain oral comments by the trial court at the hearing, Clay begins by contending that the court based its ruling on an incorrect interpretation that a receivership under section 64.091 of the Civil Practice and Remedies Code does not stay in effect beyond the expiration of the initial lease.[6]

---

[6] The trial court commented that it relied on the entire record in ruling on the motions, but that one of its beliefs was that the receivership did not stay in effect after the expiration of the original lease except for the purpose of collecting and distributing funds. Although it is

6

Clay further contends that because the receivership was "in effect," the receiver was necessarily empowered to execute successive leases once the initial lease expired. In Clay's view, therefore, the trial court had discretion only to confirm the lease, or to invalidate it solely for mistake, inadvertence, or improvidence.

Although we agree with Clay that Santa Rosa failed to show the receivership was no longer in effect at the time of the Ketchum–Clay lease, we disagree with Clay's interpretation of the authority granted to the receiver as a result of Marathon's petition. We hold the 1999 appointment order vested the receiver with the authority to execute and deliver a lease or leases to Marathon—subject to confirmation or disallowance—but did not confer the authority to execute and deliver any number of leases, successive or otherwise, to any party at the receiver's discretion. Because this ground was presented to the trial court and fully supports its ruling, we affirm its order setting aside the receiver's successive lease to Clay.

### A.    Santa Rosa failed to show the receivership was no longer in effect at the time Ketchum signed the lease with Clay.

In its motion to set aside the Ketchum–Clay lease, Santa Rosa first contended the lease was invalid because the receiver was no longer entitled to deliver an oil and gas lease given that "the Kast[a]n heirs were no longer unknown." We begin our analysis by addressing this ground because if Santa Rosa were correct that the receivership was no longer in effect, it would be unnecessary to address the scope of receiver Ketchum's authority. We conclude that Santa Rosa is incorrect, however, and hold that a claim of heirship communicated outside the judicial process did not alone invalidate either the receivership or the lease.

Section 64.091 gives trial courts discretion to "appoint a receiver for the

_____

understandable Clay would choose to address this ground first, the court's oral comments do not change its written order. *Richardson v. Johnson & Higgins of Tex., Inc.*, 905 S.W.2d 9, 11–12 (Tex. App.—Houston [1st Dist.] 1995, writ denied).

7

mineral interest . . . owned by an absent defendant" in certain actions, including an action "brought by a person claiming or owning . . . an undivided leasehold interest under a mineral lease of land in [Texas] and that has one or more defendants who have, claim, or own an undivided mineral interest in the same property." Tex. Civ. Prac. & Rem. Code Ann. § 64.091(b)(1). The plaintiff in such an action must allege and prove that he "has made a diligent but unsuccessful effort to locate the defendant" and "will suffer substantial damage or injury unless the receiver is appointed." *Id.* §64.091(c).

The statute requires the receiver, "[a]s ordered by the court," to "immediately: (1) execute and deliver to a lessee or successive lessees mineral leases on the outstanding undivided mineral interests; (2) execute and deliver to a lessee or successive lessees an assignment of the outstanding undivided leasehold interest; and (3) enter into a unitization agreement authorized by the Railroad Commission of Texas." *Id.* §64.091(f)(1–3). Once created, the receivership "continues as long as the defendant or his heirs, assigns, or personal representatives fail to appear in court in person or by agent or attorney to claim the defendant's interest." *Id.* §64.091(e).

Neither party disputes that the trial court's 1999 order in the Marathon action created a receivership for the undivided mineral interests in the 102 acres owned by the unknown Kastan heirs. Although the statute does not explicitly address how or when a receivership is dissolved, subsection (e) makes clear that it continues at least until the heirs "appear in court . . . to claim [their] interest." *Id.*

Regardless of whether Clay or the receiver had notice outside the judicial process that individuals were purporting to be the unknown Kastan heirs, the record contains no evidence that the alleged heirs had made an appearance in court to claim their interest before Ketchum executed the Clay lease in January 2012.

8

Santa Rosa did allege in its April petition in intervention that it had located the unknown Kastan heirs. We need not decide whether that filing amounted to an appearance in court by the Kastan heirs to claim their interest, however, because nothing in the statute indicates that such an appearance would dissolve the receivership retroactively. Accordingly, we hold Santa Rosa failed to show the receivership was no longer in effect when Ketchum executed the Clay lease, and we turn to the question whether the receivership order authorized Ketchum to do so.[7]

### B. The 1999 appointment order limits the receiver's authority to executing and delivering leases to Marathon.

The second ground raised in Santa Rosa's motion to set aside the Ketchum–Clay lease was that the appointment order "provided that the Receiver was to only make an oil and gas lease with Marathon." In general, "[a] receiver has only that authority conferred by the Court's order appointing him." *Ex Parte Hodges*, 625 S.W.2d 304, 306 (Tex. 1981).[8] We give effect to an order "in light of the literal language used if that language is unambiguous." *Reiss v. Reiss*, 118 S.W.3d 439, 441 (Tex. 2003) (internal quotation marks omitted); *Haworth v. Haworth*, 795 S.W.2d 296, 298 (Tex. App.—Houston [14th Dist.] 1990, no writ). Judicial orders and judgments, "like other written instruments, are to be construed as a whole toward the end of harmonizing and giving effect to all the court has written."

---

[7] In so holding, we need not and do not address whether the receivership is still in effect today or whether it was in effect at the time of the trial court's order setting aside the lease. Nor do we address whether the receivership, if still in effect, should be dissolved—an issue still pending before the trial court.

[8] *See also Baumgarten v. Frost*, 186 S.W.2d 982, 987 (Tex. 1945) ("One dealing with a receiver is charged with the knowledge of the law that the authority of the receiver is limited to that given by the court."); *Kelly v. Kelly*, 257 S.W. 992, 997 (Tex. Civ. App.—Dallas 1924) ("The order of the court making the appointment properly limits the effect of same, as well as the power and authority of the receiver under said appointment, to the possession, care, and control of the property pending the litigation.").

*Constance v. Constance*, 544 S.W.2d 659, 660 (Tex. 1976).

As permitted by section 64.091, the trial court's 1999 appointment order "authorize[s] and direct[s]" the receiver "to deliver a mineral lease, or leases, with pooling authority as provided by law, covering all the Defendants' entire mineral interests . . . *unto Marathon Oil Company*." (Emphasis added). The order provides that this direction "can be accomplished by [1] executing a separate oil and gas lease to Marathon Oil Company covering each of the five . . . tracts of land . . . or [2] by executing an oil and gas lease covering one or more of said tracts." *Cf.* Tex. Civ. Prac. & Rem. Code Ann. § 64.091(f)(1) (providing that, "[a]s ordered by the court," the receiver shall immediately "execute and deliver to a lessee . . . mineral leases on the outstanding undivided mineral interest"). If the receiver successfully negotiated, executed, and delivered the lease or leases, the order required him to "report the terms of such to this Court for confirmation or disallowance."

The Ketchum–Clay lease, which covers only one of the five original tracts, does not fall within these authorized categories of leases. To make a valid lease to Marathon, the only additional step required by the 1999 appointment order was for the court to confirm the lease executed and delivered by the receiver. But nothing in the order purports to grant the receiver authority to execute and deliver a mineral lease to any party except Marathon. Thus, absent an amendment to the appointment order granting the receiver the additional authority to lease to another party, the receiver lacks authority to execute and deliver a lease to Clay. *Cf. Ex Parte Hodges*, 625 S.W.2d at 306; *Baumgarten*, 186 S.W.at 987.

Clay relies on its counsel's representation that Ketchum entered into a lease with Marathon, and casts itself as a "successive lessee" to whom Ketchum was authorized to execute and deliver a subsequent lease. But Clay's focus on

10

language in subsection (f) of section 64.091 that "the receiver shall immediately" execute and deliver a lease or successive lease ignores the immediately preceding limitation: "[a]s ordered by the court." Tex. Civ. Prac. & Rem. Code Ann. § 64.091(f). Aside from the lack of evidence in our record as to the execution, delivery, and confirmation of a lease of the Kastan heirs' interests to Marathon, or the expiration of that lease, the 1999 appointment order does not address the receiver's authority to execute or deliver successive leases.

Clay also contends that because the order further authorizes the receiver "to enter into any unitization agreement which has been duly authorized by the Railroad Commission of Texas and to do all acts and have all powers provided for Receivers by the Statutes of the State of Texas," the receiver was empowered to enter into successive leases. Although the power to enter into successive leases is one contemplated by the statute, *see id.* § 64.091(f)(2), construing "do all acts and have all powers provided for Receivers" as providing the maximum authority permitted under the statute would render superfluous the rest of that paragraph of the trial court's order—which grants only the power to execute and deliver a single lease or set of leases, and only to Marathon. *But see Constance*, 544 S.W.2d at 660 ("Judgments, like other written instruments, are to be construed as a whole toward the end of harmonizing and giving effect to all the court has written."); *cf. Scott v. Sampson*, 333 S.W.2d 220, 222 (Tex. Civ. App.—Fort Worth 1960, writ ref'd n.r.e.) (holding court did not abuse its discretion under predecessor statute in directing receiver to execute lease to particular lessee).

Nor does the trial court's power to grant such limited discretion to the receiver defeat the purpose of the statute, as Clay contends.[9] Although we agree

---

[9] At any rate, even if the 1999 appointment order's restricted scope of authority did frustrate a statutory purpose, it would not follow that the receiver was granted all powers that would effectuate that purpose despite the order's limitations. *Cf. Shanks*, 110 S.W.3d at 447

11

with Clay that the statutory purpose of mineral receiverships is "to encourage the exploration and development of minerals," Tex. Civ. Prac. & Rem. Code Ann. § 64.091(a), the statute also limits the receiver's authority to execute and deliver leases to the authority "ordered by the court." *Id.* § 64.091(f). Thus, the plain language of the statute indicates the Legislature's determination that the exploration and development of minerals is served by providing the court with discretion regarding whether to grant authority to a receiver, and to what extent. *See id.*; *see also id.* § 64.091(b) ("a district court *may* appoint a receiver" (emphasis added)).

Because the 1999 appointment order did not grant the receiver authority to execute and deliver a lease—successive or otherwise—to any entity except Marathon, we hold Ketchum lacked the authority to execute and deliver a lease to Clay. We overrule Clay's first issue.

*     *     *

Although our concurring colleague agrees with this analysis of Santa Rosa's second ground regarding the scope of the receiver's authority, she contends that we should not have addressed Santa Rosa's first ground regarding the existence of the receivership at the time of the Ketchum–Clay lease, arguing that our discussion of that ground in Part II.A. above is advisory and violates the principle of judicial restraint. We disagree.

"The distinctive feature of an advisory opinion is that it decides an abstract question of law without binding the parties." *Tex. Ass'n of Bus v. Tex. Air Control*

---

("[W]e must interpret the decree to determine not what the trial court should have done but, if possible, what the trial court actually did."); *Bailey v. Amaya Clinic, Inc.*, 402 S.W.3d 355, 372 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("The language in the Order is unambiguous; therefore, this court must interpret the Order as having the effect required by the Order's plain language, even if this effect is contrary to the result required under applicable law.").

*Bd.*, 852 S.W.2d 440, 444 (Tex. 1993). Our holding regarding the receivership's existence at the time of the lease is far from abstract or non-binding. As noted above, the non-existence of the receivership was raised below as a ground for setting aside the lease, the trial court commented on it at the hearing, and the parties have briefed it here. If correct, it would provide an independently sufficient basis for the court's order setting aside the lease—indeed, it would allow us to avoid addressing the scope of the receiver's authority.

Moreover, addressing the existence of the receivership promotes judicial economy because it affects matters that remain pending before the trial court. We acknowledge the rule providing that our opinions must be "as brief as practicable but . . . address[] every issue raised and necessary to final disposition of the appeal," Tex. R. App. P. 47.1, as well as the general principle of restraint that a court faced with both constitutional and non-constitutional grounds for deciding a case should rest its decision on the non-constitutional ground, deciding no more than necessary.[10] But the Supreme Court of Texas, this Court, and many others have recognized that these considerations may be trumped in non-constitutional cases by the principle of judicial economy, which gives appellate courts discretion to address other possible grounds for the decision under review. *E.g., Edinburgh Hosp. Auth. v. Trevino*, 941 S.W.2d 76, 81 (Tex. 1997) (addressing issue not essential to disposition of appeal to provide trial court with guidance); *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996) ("the appellate court may consider other grounds that the movant preserved for review and trial court did not rule on in the interest of judicial economy"); *Wichita County, Tex. v. Hart*, 917 S.W.2d 779, 780 (Tex. 1996); *Lone Star Gas Co. v. R.R. Comm'n*, 767 S.W.2d 709, 711 (Tex. 1989) (per curiam) (observing that although rules "do not require or

---

[10] *VanDevender v. Woods*, 222 S.W.3d 430, 432–33 (Tex. 2007).

contemplate advisory opinions on issues not essential to the final disposition of a case," courts must also give "full consideration of all issues raised to move the case as far as possible toward final disposition").[11]

Here, addressing the existence of the receivership at the time of the Ketchum–Clay lease will provide guidance to the trial court and the parties in resolving multiple live disputes. For example, the existence of the receivership is relevant to the pending request to dissolve the receivership and distribute funds, as well as to Santa Rosa's allegation that Clay is liable for exemplary damages because it clouded Santa Rosa's title by taking a lease from Ketchum knowing that the Kastan heirs' existence made that lease invalid.[12] Because we can decide now whether the receivership still existed in January 2012 (a decision that had the potential to resolve this appeal fully), we see no point in condemning the parties to waste their time and money—and the trial court and (if appealed) this Court to waste scarce public resources—on arguing and considering that question again. We have therefore exercised our discretion to decide the question now in the interest of judicial economy.

---

[11] *See also, e.g., Houston Chronicle Pub. Co. v. McMaster*, 598 S.W.2d 864, 867 (Tex. Crim. App. 1980); *Shafighi v. Tex. Farmers Ins. Co.*, No. 14-12-00082-CV, 2013 WL 1803609, at \*5 (Tex. App.—Houston [14th Dist.] Apr. 30, 2013, no pet.) (mem. op.); *In re I.E.F.*, 345 S.W.3d 637, 639 (Tex. App.—San Antonio 2011, orig. proceeding); *Dallas/Fort Worth Int'l Airport Bd. v. Ass'n of Taxicab Operators*, 335 S.W.3d 361, 366 (Tex. App.—Dallas 2010, no pet.); *Diamond Offshore Drilling v. Advanced Indus. & Marine Servs., Inc.*, No. 14-00-00087-CV, 2002 WL 1411068, at \*5 & n.18 (Tex. App.—Houston [14th Dist.] June 27, 2002, no pet.) (not designated for publication); *Boales v. Brighton Builders, Inc.*, 29 S.W.3d 159, 165 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).

[12] The concurring opinion expresses concern that Tayland Resources filed a separate petition for a new receivership that could be impacted by our decision even though Tayland Resources is not participating as a party to this appeal. As noted above, however, Tayland Resources assigned its leases to Clay, who is a party here. In addition, it is not clear whether Clay is pursuing Tayland Resources' petition given that a substitute receiver has been appointed in the original Marathon receivership action.

14

## CONCLUSION

For these reasons, we affirm the trial court's order setting aside the Ketchum–Clay lease.


/s/        J. Brett Busby
                  Justice


Panel consists of Justices McCally, Busby, and Donovan (McCally, J., Concurring).