In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

## NO. 09-19-00019-CV
_____

## NICHOLAS MARTENY, Appellant

## V.

## BRENT W. COON AND BRENT W. COON, PC D/B/A BRENT COON & ASSOCIATES, Appellees

_____

### On Appeal from the 60th District Court
### Jefferson County, Texas
### Trial Cause No. B-199,855

_____

### MEMORANDUM OPINION

In this legal malpractice case, Nicholas Marteny appeals the trial court's grant of a traditional motion for summary judgment in favor of Brent Coon and Brent W. Coon, PC d/b/a Brent Coon & Associates (collectively "BCA"). In three issues, Marteny asks (1) whether the trial court erred by granting traditional summary judgment based on lack of duty and damages, (2) whether the trial court abused its discretion by implicitly denying the motion to compel discovery, and (3) whether the trial court abused its discretion by implicitly denying the motion to continue the

1

summary judgment hearing so Marteny could obtain additional discovery. We affirm in part, and reverse and remand in part.

## I. Background

Following the Deepwater Horizon oil spill on April 20, 2010, the United States Department of the Interior placed a moratorium on offshore drilling. After the oil spill and the imposition of the moratorium, Marteny, a merchant mariner, lost his job and had difficulty finding another due to reduced demand. Prior to hiring BCA, Marteny submitted his economic loss claim through the Gulf Coast Claims Facility ("GCCF").[1]

Thereafter, on June 10, 2011, Marteny entered into an agreement with BCA and retained the law firm

> to investigate and, if appropriate, file suit for and attempt to recover any damages and compensation to which [Marteny] may be entitled against any party or parties responsible for same, as well as attempt to compromise and settle all claims of [Marteny], in connection with or arising out of the events surrounding the April 20, 2010 explosion of the Deepwater Horizon offshore drilling rig.

The agreement allowed BCA to negotiate an aggregate settlement for Marteny along with BCA's other "similarly situated" clients and apportion joint expenses among these clients. On September 7, 2011, the GCCF denied Marteny's initial claim but advised that he had a right to appeal, and the right to file a multidistrict litigation

---

[1] The GCCF was the official claims handling program for individuals filing claims for damages related to the Deepwater Horizon oil spill.

claim in court. A BCA attorney apprised Marteny of this initial denial in a letter dated December 5, 2011, and informed Marteny that BCA "inten[ded] to dispute" the GCCF's denial.

On January 20, 2012, BCA sent another demand to the GCCF on Marteny's behalf under the Oil Pollution Act of 1990 ("OPA"). BCA demanded $162,445.20 for Marteny's economic losses and asserted that BP was designated a responsible party pursuant to the OPA. BCA left the demand open for ninety days at which point BCA would pursue remedies outside the OPA presentment process. This demand was rejected on June 13, 2012, and Marteny asserts BCA never disclosed this to him.[2]

On June 25, 2012, Marteny terminated BCA due to alleged difficulties communicating with BCA. Marteny had second thoughts and asked BCA on September 11, 2012 to "disregard the termination letter and continue to represent [him]." Subsequently, on November 20, 2012, BCA staff asked Marteny via email to confirm his desire to cancel the termination and have BCA continue to represent him under the terms of the original contract, which Marteny did the same day. On January 15, 2013, BCA filed a presentment form on Marteny's behalf indicating that Marteny suffered $100,000 in loss of income, profits and/or earning capacity.

---

[2] Marteny alleges in his brief that BCA never properly submitted this demand, which led to the claim's rejection.

3

On April 19, 2013, BCA filed two petitions in state court on behalf of over 4,000 BP clients but did not name Marteny as a plaintiff. These petitions included plaintiffs who were "[o]il service, exploration and/or drilling service companies, workers, providers, or suppliers . . . affected by the Moratorium issued by the United States Department of the Interior[.]" BCA included tort claims such as negligence and gross negligence and sued under the OPA.

In November of 2015, Marteny retained another lawyer to verify what BCA was telling him. He learned the GCCF claim had been "abandoned" and that no timely lawsuit was filed on his behalf against BP. In April 2017, Marteny sued BCA for negligence, breach of fiduciary duty and violations of the Texas Deceptive Trade Practices Act ("TDTPA").

In April 2017, Marteny propounded discovery to BCA attempting to obtain settlement information regarding other "similar clients."[3] BCA responded to this discovery, lodging objections and providing limited information. The day after the summary judgment hearing, Marteny sent correspondence to BCA regarding the

---

[3] The discovery requests defined "similar clients" as "those clients or plaintiffs [BCA] represented in claims with the GCCF, the Settlement Program, any other settlement or claim program relating to the spill, or in litigation against BP arising out of the Deepwater Horizon Oil Spill that occurred on or about April 20, 2010 and who were oil service, exploration or marine workers, providers, or suppliers that, like Marteny, claimed to suffer economic losses as a result of the oil spill or the moratorium issued by the United States Department of the Interior following the spill."

deficient discovery responses. In response, BCA provided a one-page privilege log. Thereafter, Marteny filed a motion to compel written discovery complaining of BCA's objections and inadequate privilege log. BCA responded, arguing the settlement information was sealed and confidential but offered to produce copies of the MDL confidentiality order for *in camera* inspection.

BCA filed a traditional motion for summary judgment solely addressing the legal malpractice cause of action. BCA argued in the motion for summary judgment that it did not represent Marteny after June 25, 2012, and therefore, owed him no duty. BCA also contended that Marteny did not have any damages because he only suffered moratorium losses, and a federal court ruled that BP was not responsible under the OPA for economic losses resulting from the moratoria.[4] BCA did not contest that some plaintiffs received compensation for moratoria claims under settlement agreements, rather BCA argued that the MDL court ruled moratoria-only claims like Marteny's were not compensable. BCA's summary judgment motion did not address the breach of fiduciary duty or TDTPA causes of action. BCA did not submit any affidavits or expert testimony in support of its motion. The only evidence BCA attached in support of its summary judgment motion was unauthenticated copies of: (a) Marteny's termination letter; (b) Marteny's written discovery

---

[4] There were multiple drilling moratoria imposed but BCA references a single moratorium.

responses; (c) Marteny's original petition and request for disclosure; (d) MDL notice of filing of the economic and property damages settlement agreement; and (e) order and reasons "[As to the OPA Test Cases/Moratorium Claims]."[5]

Marteny responded to BCA's summary judgment motion asserting: (1) that a genuine issue of material fact remained regarding BCA's continued representation of him after June 25, 2012; and (2) genuine issues of fact existed as to whether BCA's conduct caused Marteny damages. Marteny's response included the following evidence: (1) Marteny's affidavit; (2) the original retention agreement with BCA; (3) various correspondence and demands to and from the GCCF regarding Marteny; (4) email exchanges between Marteny and BCA regarding Marteny withdrawing his termination and desire for ongoing representation under the terms of the original retention agreement; (5) "Deepwater Horizon Oil Pollution Act Presentment Claim Form" submitted on January 15, 2013, by BCA on behalf of Marteny; (6) petitions BCA filed in Texas state court naming thousands of plaintiffs but not Marteny; (7) March 17, 2017 MDL Order regarding Moratoria Hold Claims; (8) MDL Pretrial Order No. 60; (9) MDL Order regarding remaining plaintiffs in B1

---

[5] In his summary judgment response, Marteny objected to BCA's summary judgment exhibits because they were unauthenticated. BCA subsequently responded in its reply to Marteny's response that two of the exhibits were documents from a federal court and were self-authenticated, and BCA provided the affidavit of an office employee for the third document, which was Marteny's June 25, 2012, letter terminating BCA.

pleading bundle; (10) Marteny's Second Set of Interrogatories, Second Requests for Production, and First Request for Admissions to BCA; (11) email from Marteny's counsel to BCA requesting depositions beginning March 21, 2018; and (12) Marteny's counsel's affidavit authenticating documents.

The trial court granted BCA's motion for summary judgment without ruling on the pending motion to compel written discovery.[6] The trial court dismissed Marteny's claims against BCA and indicated it "finally disposes of all parties and all claims[.]" Marteny timely appealed. Marteny contends on appeal that BCA owed him a duty as it continued representing him, and BCA failed to negate the damages element as a matter of law.[7] Marteny also argues he used diligence in attempting to obtain discovery, and the discovery was necessary to establish damages under

---

[6] The trial court's first summary judgment order dismissed Marteny's claims without prejudice. While it still had plenary power, the trial court subsequently entered a nunc pro tunc summary judgment order that dismissed the claims with prejudice. *See* Tex. R. Civ. P. 329b(d) (giving trial court plenary power for thirty days after the judgment is signed).

[7] On appeal, Marteny does not challenge the dismissal of the breach of fiduciary duty or TDTPA claims by assigning error. Accordingly, we do not disturb the dismissal of these additional causes of action. *See Yiamouyiannis v. Thompson*, 764 S.W.2d 338, 342 (Tex. App.—San Antonio 1988, writ denied) (citing *Prudential Ins. Co. v. J.R. Franclen, Inc.*, 710 S.W.2d 568, 569 (Tex. 1986); *Gulf Consol. Int'l, Inc. v. Murphy*, 658 S.W.2d 565, 566 (Tex. 1983)) (explaining that where the trial court erroneously dismissed all causes of action, although the motion for summary judgment did not address them all but appellant failed to assign error on appeal, the court of appeals would not disturb the rulings); *see also Sanchez v. Rodriguez*, Nos. 13-00-059-CV, 13-00-060-CV, 2001 WL 34616782, at *7 (Tex. App.—Corpus Christi Oct. 4, 2001, no pet.) (citations omitted).

7

*Elizondo v. Krist*, therefore, the trial court abused its discretion in denying the motion to compel. *See* 415 S.W.3d 259, 263 (Tex. 2013).

## II. Issue One: Summary Judgment

In his first issue, Marteny argues that the trial court erred by granting summary judgment in favor of BCA on the elements of duty and damages. Specifically, Marteny challenges BCA's contention that it no longer represented him and thus, owed him no duty. Marteny also argues that BCA did not conclusively negate the damages element with competent summary judgment evidence.

## A. Traditional Summary Judgment: Law and Standard of Review

We review a trial court's grant of a traditional summary judgment *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). The moving party has the burden to show with competent summary judgment evidence that no genuine issue of material fact exists and it is entitled to summary judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). On appeal, we review the summary-judgment record "in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005). We credit evidence in favor of the verdict if reasonable

jurors could and disregard evidence that contradicts the verdict evidence unless reasonable jurors could not. *Id.* at 827.

Summary judgment for a defendant is proper only if the defendant negates at least one element of each of the plaintiff's theories of recovery. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). When a trial court grants a summary judgment without specifying the basis, we will affirm if any one of the movant's theories has merit. *See Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).

**B. Analysis**

To establish a legal-malpractice claim, a client must establish that: (1) the lawyer owed him a duty of care; (2) the lawyer breached the duty; and (3) the lawyer's breach proximately caused the client damages.[8] *Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017); *Rogers v. Zanetti*, 518 S.W.3d 394, 400 (Tex. 2017); *Stanfield v. Neubaum*, 494 S.W.3d 90, 96 (Tex. 2016). When a legal malpractice suit arises from prior litigation, a client must show that he would have obtained a more favorable result in the underlying litigation if the attorney exercised

---

[8] The anti-fracturing rule prevents a plaintiff from converting professional negligence or legal malpractice claims into other claims. *Won Pak v. Harris*, 313 S.W.3d 454, 457 (Tex. App.—Dallas 2010, pet. denied). Professional negligence, or the failure to exercise ordinary care, includes improperly representing a client. *Id.* Marteny sued BCA alleging negligence and TDTPA violations; however, we note that the heart of Marteny's complaint is legal malpractice arising from BCA's alleged failure to adequately represent him. Likewise, BCA's traditional summary judgment motion only addressed the legal malpractice claim. *See supra* note 7.

the appropriate standard of care. *Elizondo*, 415 S.W.3d at 263; *see also Rogers*, 518 S.W.3d at 401. This is the suit-within-a-suit analysis and is the traditional way plaintiffs prove legal malpractice claims. *See Rogers*, 518 S.W.3d at 401 (citation omitted). "Where the injury claimed does not depend on the merits of the underlying action, however, the case-within-a-case methodology does not apply." *Id.* (citations omitted). When a plaintiff alleges negligent settlement in a legal malpractice case, the "suit within a suit" analysis is not required. *Elizondo*, 415 S.W.3d at 270. Rather, in such a case, the alternative method available to prove attorney-malpractice damages necessitates an analysis of settlements made under comparable circumstances. *Id.*

In the trial court, BCA moved for traditional summary judgment challenging the duty and damages elements of Marteny's legal malpractice claim. Specifically, BCA argued that: (1) it owed no duty to Marteny because it no longer represented him; and (2) there were no damages because the MDL court determined moratoria-only claims were not compensable. The trial court did not specify its basis for granting the summary judgment motion, so we examine whether any grounds were meritorious. *See Star-Telegram, Inc.*, 915 S.W.2d at 473.

### 1. BCA Failed to Conclusively Negate the Duty Element

Marteny argues that BCA failed to conclusively negate the duty element in its summary judgment motion, because, despite BCA's assertion to the contrary, it

10

continued to represent him after June 25, 2012. "An attorney only owes a duty to his clients." *Sotelo v. Stewart*, 281 S.W.3d 76, 80 (Tex. App.—El Paso 2008, pet. denied) (citing *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 792 (Tex. 1999); *Stancu v. Stalcup*, 127 S.W.3d 429, 432 (Tex. App.—Dallas 2004, no pet.)). If a defendant moves for summary judgment based on the lack of an attorney-client relationship, the defendant must prove the non-existence of the relationship as a matter of law. *Stancu*, 127 S.W.3d at 432 (quoting *Yaklin v. Glusing, Sharpe & Krueger*, 875 S.W.2d 380, 383 (Tex. App.—Corpus Christi 1994, no pet.)).

In support of its motion for summary judgment, BCA provided correspondence from Marteny indicating his desire to terminate the attorney-client relationship. The summary judgment record reveals that in response, Marteny produced the original retention agreement and emails expressing his desire to withdraw the June 25 termination and for BCA to continue representing him. In one email exchange, BCA asked Marteny to confirm via return email that he wished for them to continue representing him under the terms of their original agreement, which he did. Although usually created by contract, an attorney-client relationship can be implied based on the parties' conduct. *Sotelo*, 281 S.W.3d at 80 (citations omitted). Marteny also produced evidence that BCA acted on his behalf following this written confirmation in January of 2013 by sending a new demand for economic damages.

11

Based on this record, we hold that BCA failed to conclusively negate the existence of an attorney-client relationship and consequently, the duty element.[9] *See id.* at 81 (explaining that where an attorney failed to negate the duty element as a matter of law, summary judgment could not be properly granted on that ground).

**2. BCA Failed to Conclusively Negate Damages**

Another essential element of a legal-malpractice claim is that the attorney's breach of a duty caused the client damages. *Starwood Mgmt., LLC*, 530 S.W.3d at 678; *Rogers*, 518 S.W.3d at 400. As the movant for a traditional motion for summary judgment, a defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of the plaintiff's cause of action or if it conclusively establishes all elements of an affirmative defense. *See Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). Having failed to negate the duty element, BCA's evidence must disprove the damages element as a matter of law. *See id.*

Case law has recognized

> that legal-malpractice damages are the difference between the result obtained for the client and the result that would have been obtained with competent counsel. They do not require that damages can only be measured against the result the client would have obtained if the case had been tried to a final judgment.

---

[9] At the summary judgment hearing, BCA's counsel agreed there was "probably a fact issue" on the duty element and BCA's continued representation of Marteny and "that summary judgment may not be appropriate there."

12

*Elizondo*, 415 S.W.3d at 263. In the mass tort context, "where the same defendant settled thousands of cases," the Texas Supreme Court has determined that an expert can "base his opinion of malpractice damages on a comparison of what similarly situated plaintiffs obtained from the same defendant." *Id.* This data, the Court explained "is perhaps the best evidence of the real-world settlement value of the case." *Id.* Experts can do so

> when, in a mass tort litigation involving thousands of similar claimants arising out of the same event, the expert measures the 'true' settlement value of a particular case by persuasively comparing all the circumstances of the case to the settlements obtained in other cases with similar circumstances arising from the event.

*Id.*

BCA filed suit on behalf of over 4,000 other plaintiffs arising from the same oil spill, some of whom had moratoria-only claims, and yet BCA did not name Marteny in these petitions. Assuming, without deciding, that the relied-upon MDL order was proper summary judgment evidence, the MDL court ruled that BP was not responsible under the OPA for moratoria-only claims. That says nothing about other common-law tort claims BCA pleaded when they filed suit in state court on behalf of other plaintiffs with moratoria-only claims. Finally, there was evidence that court appointed neutrals recommended settlement values even for these moratoria claims, and some of the plaintiffs were compensated, which a BCA attorney acknowledged at the summary judgment hearing. BCA did not produce any affidavits or expert

13

testimony regarding a lack of damages. It simply pointed to the MDL court's ruling as being dispositive.

Unlike the plaintiffs in *Elizondo*, Marteny offered no expert testimony on damages; however, he was not required to because BCA did not file a no-evidence motion for summary judgment. Rather, it filed a traditional motion for summary judgment, which meant the burden remained on BCA to conclusively negate damages rather than shifting the burden to Marteny to provide more than a scintilla of evidence on damages.[10] *Compare* Tex. R. Civ. P. 166a(c), *with* 166a(i); *see also Elizondo*, 415 S.W.3d at 263 (analyzing no-evidence motion for summary judgment and damages element in mass tort legal malpractice case); *Burrow v. Arce*, 997 S.W.2d 229, 237 (Tex. 1999) (analyzing traditional motion for summary judgment and damages element in legal malpractice case). Marteny requested information in discovery that the *Elizondo* Court outlined as acceptable proof and explained why he needed the information by specifically citing to *Elizondo*.

---

[10] As the dissent in *Elizondo* pointed out, that case involved a no-evidence motion for summary judgment, which was distinguishable from the facts of its prior opinion in *Burrow v. Arce*, where the defendants moved for a traditional summary judgment. *See Elizondo v. Krist*, 415 S.W.3d 259, 277 (Tex. 2013) (Boyd, J. dissenting) (citing *Burrow v. Arce*, 997 S.W.2d 229, 237 (Tex. 1999). In *Burrow*, the defendants moving for traditional summary judgment were required to prove the absence of damages as a matter of law. *Id.* Likewise, BCA moved for traditional summary judgment.

14

BCA's traditional motion for summary judgment argued that because Marteny's damages resulted from the government-imposed moratorium, his damages were not compensable, and therefore Marteny sustained no damages. An attorney's "bare assertions that [the client] would have lost anyway do not constitute summary judgment proof and cannot support their motion for summary judgment." *Silvio v. Ostrom*, No. 01-11-00293-CV, 2013 WL 6157358, at *3 (Tex. App.—Houston [1st Dist.] Nov. 21, 2013, no pet.) (mem. op.) (citing *Adams v. Downey*, 124 S.W.3d 769, 773 (Tex. App.—Houston [1st Dist.] 2003, no pet.)). BCA provided no expert testimony supporting its contention that an MDL court's determination of lack of compensability under the OPA would have resulted in no settlement value for Marteny's claims.

In *Burrow v. Arce*, the Texas Supreme Court reversed a traditional summary judgment in favor of defendant attorneys where expert affidavits were found to be deficient. 997 S.W.2d at 237. There, the Court ultimately concluded that the attorneys failed to establish as a matter of law that the clients did not suffer actual damages, thus the attorneys were not entitled to summary judgment on that ground. *Id.* In explaining their decision, the Court reasoned that the attorneys providing affidavits had "substantial credentials to render expert opinions on issues of attorney practice, but their affidavits . . . offer[ed] no basis for the opinions stated." *Id.* Here,

15

BCA failed to provide *any* expert testimony on the damages element, by affidavit or otherwise.

The summary judgment record shows that BCA submitted multiple demands for Marteny's economic losses through various avenues. The summary judgment record also established that BCA filed suit on behalf of many plaintiffs who sustained economic damages related to the moratoria, according to petitions filed in state court. BCA has provided no evidence nor even argued that the named plaintiffs' claims were distinct from Marteny's. *See Elizondo*, 415 S.W.3d at 263. Specifically, BCA failed to present evidence that other plaintiffs did not receive settlements for claims similar to Marteny's. *See id.*; *Burrow*, 997 S.W.2d at 237.

Viewing the summary judgment evidence in the light most favorable to the non-movant, we conclude a genuine issue of material fact remains as to Marteny's damages and the settlement value of the case. *See Elizondo*, 415 S.W.3d at 263 (noting what a plaintiff must prove to establish negligent settlement damages in the mass tort context); *Burrow*, 997 S.W.2d at 237 (explaining defendant attorneys' failure to provide adequate expert testimony on damages in support of traditional summary judgment); *see also City of Keller*, 168 S.W.3d at 824. Because BCA failed to meet its burden by conclusively negating one or more essential elements of Marteny's legal malpractice claim and genuine issues of material fact remain, we sustain issue one.

## III. Issues Two and Three: Motion to Compel and Motion for Continuance

In his second and third issues, Marteny contends the trial court abused its discretion by implicitly denying his motion to compel as well as his requested continuance of the summary judgment hearing.

### A. Motion to Compel

Having determined the trial court erred in granting BCA's traditional summary judgment, we find it necessary to address the implicit denial of Marteny's motion to compel. "Because this issue will likely recur on remand, we address it in the interest of judicial economy and to provide guidance to the trial court."[11] *De Anda v. Jason C. Webster, P.C.*, No. 14-17-00020-CV, 2018 WL 3580579, at *7 (Tex. App.—Houston [14th Dist.] July 26, 2018, pet. denied) (mem. op.) (citing *Clay Expl., Inc. v. Santa Rosa Operating, LLC*, 442 S.W.3d 795, 802–03 (Tex. App.—Houston [14th Dist.] 2014, no pet.)).

We review a trial court's ruling on a motion to compel discovery for an abuse of discretion. *Stewart v. Lexicon Genetics, Inc.*, 279 S.W.3d 364, 373 (Tex. App.—Beaumont 2009, pet. denied); *see also Dillard Dept. Stores, Inc. v. Hall*, 909 S.W.2d

---

[11] *See also Edinburg Hosp. Auth. v. Trevino*, 941 S.W.2d 76, 81 (Tex. 1997) (explaining they addressed issue not essential to appeal's disposition to provide the trial court with guidance); *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996) (noting that an appellate court could consider other grounds the movant preserved for review and the trial court did not rule on "in the interest of judicial economy").

491, 492 (Tex. 1995). A trial court abuses its discretion when it acts unreasonably or arbitrarily or without reference to guiding rules and principles. *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998).

Rule 193.3 provides that a party claiming privilege may withhold privileged material but "*must* state" in its response or in a separate document that: "(1) information or material responsive to the request has been withheld, (2) the request to which the information or material relates, and (3) the privilege or privileges asserted." Tex. R. Civ. P. 193.3(a) (emphasis added). After receiving a response indicating material has been withheld from production, the party seeking discovery may serve a written request that the withholding party identify the information and material withheld. *Id.* 193.3(b). Within fifteen days of receiving a request, the withholding party "must serve a response that: (1) describes the information or materials withheld that, without revealing the privileged information itself or otherwise waiving the privilege, enables other parties to assess the applicability of the privilege, and (2) asserts a specific privilege for each item or group of items withheld." *Id.*

There is no presumption that documents are privileged. *In re E.I. DuPont de Nemours and Co.*, 136 S.W.3d 218, 223, 225 (Tex. 2004). The party asserting a privilege has the burden to produce evidence concerning the privilege's applicability. *Peeples v. Honorable Fourth Supreme Judicial Dist.*, 701 S.W.2d 635,

18

637 (Tex. 1985). Simply listing a specific privilege in a response or a privilege log does not preserve the privilege. *In re Monsanto Co.*, 998 S.W.2d 917, 928 (Tex. App.—Waco 1999, orig. proceeding); *see also In re Park Cities Bank*, 409 S.W.3d 859, 868 (Tex. App.—Tyler 2013, orig. proceeding). "[I]n addition to the privilege log, the party resisting discovery must establish a prima facie case for the privilege by testimony or affidavit." *In re Park Cities Bank*, 409 S.W.3d at 868 (citing *In re Living Ctrs. of Tex., Inc.*, 175 S.W.3d 253, 261 (Tex. 2005)); *see also In re E.I. DuPont de Nemours and Co.*, 136 S.W.3d at 223.

Unlike *Elizondo*, where the plaintiffs' attorneys did not ask the trial court to defer ruling on a summary judgment motion until it could obtain from the third parties (or the attorneys) evidence of other settlements, Marteny did so. In *Elizondo*, the Texas Supreme Court disagreed with the appellate court's dissent, because

> none of [the trial court] discovery skirmishes indicate that the Elizondos took the position in the trial court that (1) discovery of the dollar amount of other settlements in similar cases was needed so their expert could make a valid, non-conclusory determination of the adequacy of the Elizondo settlement or better describe his analysis, and (2) consideration of the summary judgment motions on damages should be continued until such discovery was provided.

*Elizondo*, 415 S.W.3d at 269.

The record here establishes that Marteny attempted to obtain written discovery regarding settlement information of other BCA clients similarly situated to him, who sustained economic losses as a result of the oil spill and subsequent

19

moratoria. Marteny argued these were relevant and necessary to have his experts assess damages pursuant to *Elizondo*. Marteny points to deficiencies in BCA's prophylactic objections, assertions of privilege, and privilege log. BCA's privilege log was a single page, and while it provided broad classes of documents, it did not provide descriptions of the specific documents withheld by identifying the authors, the dates, or the recipients. It also did not provide date ranges for the documents withheld and failed to identify which requests the withheld materials were responsive to.

In BCA's response to the motion to compel, it relied on a purported confidentiality order issued by the MDL pertaining to the settlements; however, the document produced *in camera* for the trial court's review pertained to a single individual, not an entire class of settling plaintiffs. This does not establish that the information requested for BCA's similarly situated clients in this mass tort litigation was covered by a similar confidentiality provision. This document, in the absence of affidavit or other testimony, failed to establish a prima facie case for the applicability of a privilege that would preclude the production of information pertaining to other settling plaintiffs. Moreover, a settlement agreement's inclusion of a confidentiality provision does not render the agreement or its contents undiscoverable as a matter of law. *In re DCP Midstream, L.P.*, No. 13-14-00502-CV, 2014 WL 5019947, at *7 (Tex. App.—Corpus Christi Oct. 7, 2014, orig. proceeding) (citations omitted).

20

A trial court abuses its discretion by not requiring the production of an adequate privilege log so that claims of privilege can be properly assessed. *See In Re Lumbermen's Underwriting Alliance*, 421 S.W.3d 289, 295 (Tex. App.—Texarkana 2014, orig. proceeding). Additionally, "[a] trial court is required to consider and rule upon a motion within a reasonable time." *Safety-Kleen Corp v. Garcia*, 945 S.W.2d 268, 269 (Tex. App.—San Antonio 1997, no pet.). Considering the deficient privilege log and BCA's failure to make a prima facie case for the applicability of the asserted privileges, we determine the trial court abused its discretion by refusing to rule on Marteny's motion to compel.[12] We sustain Marteny's second issue and remand to the trial court to order the production of an adequate privilege log and development of affidavit or other testimony, so that the applicability of the asserted privileges can be properly assessed by the trial court. *See In Re Lumbermen's Underwriting Alliance*, 421 S.W.3d at 295.

## B. Motion to Continue Summary Judgment Hearing

Based on our resolution of Marteny's other issues, we do not address his last issue as it would afford him no greater relief on appeal. *See* Tex. R. App. P. 47.1.

---

[12] The record reveals that after the trial court granted the BCA's summary judgment, Marteny filed a motion to reconsider. In that motion, Marteny pointed out that the trial court refused to rule on the motion to compel before ruling on the summary judgment and requested an explicit ruling on the motion to compel and production of an adequate privilege log. Therefore, Marteny preserved his complaint regarding the trial court's refusal to rule on his motion to compel. *See* Tex. R. App. P. 33.1(a).

## IV. Conclusion

Marteny did not challenge the trial court's dismissal of his breach of fiduciary duty and TDTPA claims, we therefore, affirm the trial court's judgment dismissing those claims. We hold that BCA failed to carry its burden as a traditional summary judgment movant to conclusively negate the challenged elements of duty and damages in this legal malpractice case. Because genuine issues of material fact remain, the trial court erred in granting summary judgment. We reverse and remand Marteny's legal malpractice claim. We further conclude that BCA's privilege log was inadequate, and it failed to make a prima facie case for the applicability of the asserted privileges. Accordingly, the trial court abused its discretion by refusing to rule on Marteny's motion to compel and ordering the production of an adequate privilege log. We remand that issue to the trial court for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

_____
CHARLES KREGER
Justice

Submitted on March 12, 2020
Opinion Delivered September 24, 2020

Before McKeithen, C.J., Kreger and Johnson, JJ.

22